## IN RE STEVEN N. ET AL.*
### (AC 19123)

Lavery, Mihalakos and Daly, Js.[1]

Argued December 16, 1999—officially released May 9, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*William R. Kinloch*, for the appellant (respondent mother).

*Michael J. Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

DALY, J. The respondent mother[2] appeals from the judgments of the trial court terminating her parental rights with respect to her two minor children, M and S. The respondent claims that the court improperly determined that the department of children and families (department) (1) did not prevent the respondent from maintaining a relationship with her children and (2) provided appropriate reunification services. Both of these claims are based on the findings of the trial court required by General Statutes (Rev. to 1997) § 17a-112 (e), now (d).[3] We affirm the judgments of the trial court.

---

[2] The parental rights of the children's father also were terminated. Only the respondent mother has appealed, and we refer to her in this opinion as the respondent.

[3] General Statutes (Rev. to 1997) § 17a-112 (e), now (d), provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent . . . (7) the extent to which a parent has been

The following facts and procedural history are relevant to this appeal. The respondent, who has a history of psychiatric illness, was unable to care for or control her children, who have significant problems of their own. The household was marked by chaos, substance abuse, extreme domestic violence and infidelity. The children were unkempt and uncontrollable. S also suffers from psychiatric disorders and has inflicted injuries on himself. M is not so disturbed.

The children were placed in foster care in June, 1994, after the department's efforts to work with the children and their parents failed. On March 26, 1996, both children were adjudicated neglected because the respondent was unable to provide proper care and attention, and the children were living in conditions injurious to their well-being. They were committed to the custody of the petitioner, the commissioner of children and families (commissioner). On June 9, 1997, the commissioner filed petitions to terminate the respondent's parental rights with respect to the children.

The amended petitions alleged three bases for terminating the respondent's parental rights: (1) the children were found in a prior proceeding to have been neglected or uncared for, and the respondent failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in their lives; (2) the children were denied by reason of an act or acts of commission or omission by the respondent the care, guidance or control necessary for their physical, educational, moral or emotional well-being; and (3) there was no ongoing parent-child relationship with respect to the respondent

prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

that ordinarily develops as a result of a parent's having met on a continuing day-to-day basis the physical, emotional, moral and educational needs of the children, and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the children (no ongoing parent-child relationship).

Trial was held on three days in late August and early September, 1998. The court concluded that there was clear and convincing evidence that the respondent had failed to achieve sufficient personal rehabilitation, failed to meet the children's needs by acts of commission or omission, that there was no ongoing parent-child relationship and that it was in the best interests of the children to terminate the respondent's parental rights. At the time, M and S were eight and nine years of age, respectively. The respondent appealed.

" 'Termination of parental rights' means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents . . . ." General Statutes § 45a-707 (8). "Termination of parental rights is 'a most serious and sensitive judicial action.' " *In re Barbara J.*, 215 Conn. 31, 44, 574 A.2d 203 (1990). "Since termination of parental rights is the ultimate interference by the state with the natural rights of parents in their children, resulting in everlasting severance of the legal relationship, and usually the permanent separation of parent and child as well, courts must require strict adherence to the statutory standards." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986).

On appeal, "[w]e will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record." *In re Romance M.*, 229 Conn. 345, 353, 641 A.2d 378 (1994). "[G]reat weight is given to the

judgment of the trial court because of its opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *Rummel* v. *Rummel*, 33 Conn. App. 214, 221, 635 A.2d 295 (1993). " 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' " *In re David E.*, 4 Conn. App. 653, 656, 496 A.2d 229 (1985). "[O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994).

I

On appeal, the respondent's first claim is that the court improperly found, pursuant to § 17a-112 (e) (7), that the department did not prevent her from maintaining a relationship with her children. The respondent believes that the department's curtailing of her visits with the children diminished her relationship with them. We disagree.

The following additional facts are necessary to our resolution of this claim. Bruce Freedman, a clinical psychologist with a specialty in family studies, was engaged to evaluate the family in August, 1994, June, 1996, and June, 1998. In Freedman's opinion, the respondent is not psychologically capable of caring for the children or raising them to maturity. The respondent lacks insight as to her limitations and told Freedman that she does not need professional help, and that there is nothing anyone can do to help her. She does not have the ability to understand or control S. According to Freedman, there is no bond between the respondent and the children, and the respondent's ability to care

for them is a fantasy on her part. The respondent is unable to comprehend or provide for her children's special needs. The respondent's own psychiatrist, Kinsom Lee, found that she did not make progress in group therapy and was discharged from treatment.

The court found that the respondent had not visited with her children since October, 1996, and that the decision to terminate visitation was not made by her voluntarily. The department made the decision to end visitation to protect the children from the negative consequences of seeing the respondent. Renae Vitale, a licensed clinical social worker, conducted visitation sessions between the respondent and the children in 1996. The children were anxious during the visits. M refused to see his mother again. Vitale observed the respondent tell S that he had to behave and be good so that they could visit again; in other words, the respondent placed the blame for the situation on the shoulders of her disturbed and psychiatrically vulnerable child. Vitale saw no bond between the respondent and the children, concluded that continued visits between S and the respondent would adversely affect his coping skills and recommended that visitation cease.

The court found that the department took many steps to encourage the respondent to achieve personal rehabilitation and to have a meaningful relationship with the children. The respondent was not able to accomplish either goal. The department's conduct in terminating visitation was not inappropriate. The court concluded that problems concerning visitation were not due to the respondent's being separated from her children, but were the result of her inability to come to terms with her own personal problems and to learn how to be a parent to her children.

After reviewing the record, reading the briefs of the parties and hearing them at oral argument, we hold that

the trial court did not abuse its discretion in finding that the department did not prevent the respondent from maintaining a relationship with the children by terminating supervised visitation.

## II

The respondent's second claim is that the court improperly found that the department provided reunification services pursuant to § 17a-112 (e) (1). We disagree.

The court found that the department provided or attempted to provide numerous services to the respondent and the children. The court specifically found that the department provided intensive family preservation programs, counseling, child guidance counseling, Rescue Head Start, a preschool intervention program, an infant toddler program and the PEDAL program at the former Newington Children's Hospital, a parent aide, parenting classes, respite care, visitation and transportation assistance. The respondent embarked on these programs but failed to complete any of them.

We conclude that the court properly found that the department provided the respondent and the children with timely and appropriate rehabilitative services. The respondent was unable or unwilling to take advantage of the services provided to her. The respondent does not challenge the court's ultimate conclusion that termination of her parental rights is in the best interests of the children.

The judgments are affirmed.

In this opinion the other judges concurred.