## IN RE DANIEL C. ET AL.*
### (AC 20034)
### (AC 20035)

Landau, Mihalakos and Daly, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 31, 2000—officially released May 15, 2001

*Mary Ann Barile*, for the appellant (respondent mother).

*Mildred Doody*, for the appellant (respondent father).

*Gregory T. D'Auria*, assistant attorney general, with whom were *Paula D. Sullivan*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Carolyn K. Querijero*, assistant attorney general, for the appellee (petitioner).

*Opinion*

DALY, J. In these consolidated appeals,[1] the respondent father appeals (20035) from the judgments terminating his parental rights with respect to his two children, D and K, and the respondent mother appeals (20034) from the judgment terminating her parental rights with respect to D.[2] On appeal, the respondents claim that the trial court improperly (1) denied the respondent father's motion to strike portions of the termination petitions filed by the petitioner, the commissioner of children and families (commissioner), and granted the coterminous petitions for neglect and the termination of parental rights on the basis of failure to achieve personal rehabilitation in violation of General

---

[1] The trial court consolidated the petitions to terminate the respondents' parental rights with respect to each child and jointly adjudicated both cases. On appeal, the respondents adopt each other's respective statements of the facts, issues and arguments contained in their separate appellate briefs. Therefore, we will review this matter as a joint appeal.

[2] The respondent mother does not appeal from the trial court's termination of her parental rights with regard to K on the ground that she is "the parent of a child under the age of seven years who is neglected or uncared for, [and she] has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." General Statutes (Rev. to 1997) § 17a-112 (c) (3) (E).

Statutes (Rev. to 1997) § 17a-112 (c) (3) (B),[3] (2) denied their motions for an independent psychological evaluation in violation of their due process rights, (3) found that termination was in the best interests of the minor children and (4) denied the respondents' motions for contempt. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. The respondents, who are married and the biological parents of D and K, both have long personal histories of substance and alcohol abuse, and domestic violence. On July 3, 1989, the respondent mother, while pregnant with D, overdosed on heroin and, as a result, gave birth to D prematurely. Shortly after D's birth, in October, 1989, the respondents were arrested for disorderly conduct following a domestic dispute. At the time of their arrest, the respondents were extremely intoxicated. Due to the respondents' alcohol abuse and domestic violence, the department of children and families (department) removed D from the respondents' care under a ninety-six hour hold on October 3, 1989. On October 6, 1989, the trial court entered an order of temporary custody, and the commissioner soon thereafter filed a neglect petition pursuant to General Statutes (Rev. to 1997) § 46b-129.[4]

---

[3] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that over an extended period of time . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[4] General Statutes (Rev. to 1997) § 46b-129 (a) provides in relevant part: "Any selectman, town manager, or town, city, or borough welfare department, any probation officer, the Connecticut Humane Society, or the Commissioner of Social Services, the Commissioner of Children and Families or any child-caring institution or agency approved by the Commissioner of Children and Families, a child or his representative or attorney or a foster parent of a child, having information that a child or youth is neglected,

D was adjudicated neglected in February, 1990, and remained in the custody of the commissioner until November 16, 1990. While D was in foster care, the respondents attended couple's counseling and entered into substance abuse treatment programs. D returned to the care of the respondents under an order of protective supervision that was rescinded on April 25, 1991. The court also ordered expectations that required, in part, that the respondents remain alcohol and drug free, and participate in counseling for their domestic violence and substance abuse.

On December 16, 1991, K was born. By April, 1995, the department again became involved with the respondents after it discovered that the respondents had resumed abusing alcohol and substances in the home and also had engaged in domestic violence. On April 17, 1995, the department removed K and D from the respondents' care and placed the children in foster homes, pursuant to an order of temporary custody. Both children were adjudicated neglected on December 15, 1995, but returned to the respondents' care soon thereafter under protective supervision. Again, the court-ordered expectations requiring that the respondents, in part, refrain from abusing alcohol and substances, attend drug and alcohol treatment programs, participate in the Coordinating Counsel for Children in Crisis parent aide program (4 C's program), and secure adequate housing and a source of income.

A few weeks later, on January 31, 1996, the respondent mother notified the department that she and her husband had relapsed and were abusing substances, which rendered them incapable of caring for D and K. New orders of temporary custody were issued on February 2, 1996, and the department removed the chil-

uncared-for or dependent, may file with the Superior Court . . . a verified petition . . . ."

dren from the respondents' care and placed them in foster homes. The court modified the December 15, 1995 neglect adjudication on May 21, 1996. While D and K lived in foster care, the respondents sought alcohol and substance abuse treatment pursuant to the department's recommendations. After remaining in foster care for fifteen months, D and K returned to the respondents' home on May 21, 1997, under a six month order of protective supervision with expectations. Again, expectations were set that the respondents abstain from abusing alcohol and substances.

In March, 1998, the department received a complaint from the principal of the school that D and K attended, stating that he suspected that the respondent mother was abusing substances and that she had stopped bringing the children to school. The department also received a referral from a West Haven police officer, who had arrested the respondent mother for risk of injury to children after she had left D and K alone in their yard and had locked them out of the house.

On April 6, 1998, D fled his home to a neighbor's house after the respondents had engaged in a physical fight and after the respondent mother repeatedly had struck D and K across their faces. The neighbor immediately called the police. When the police arrived, they found garbage strewn throughout the respondents' house and the respondents both highly intoxicated. The respondent mother also had bruises and cuts on her face, while D had red marks over his body from being slapped. The police arrested the respondents for breach of the peace, and the respondent mother, additionally, for risk of injury to a child.

The department investigated the respondents' home on April 6, 1998, and found it dirty and smelling of alcohol. The respondent father stated to a department employee that his altercation with the respondent

mother had begun because he had recently been fired from his job for stealing money from his employer to support his wife's heroin habit. He reported that he had been continually drunk since losing his job. The respondent mother also stated that since March, 1998, she had been ingesting one to two bags of heroin a day. The respondent mother also revealed that her longest period of sobriety in her adult life was for twenty-one months, while the respondent father claimed that at one time he had been sober for twenty-two consecutive months.

The department placed a ninety-six hour hold on the children. On April 9, 1998, the commissioner filed petitions for neglect and was granted temporary custody of the two children. The neglect petitions were based on the respondent mother's alcohol and heroin abuse, the respondent father's alcohol abuse and domestic violence. On May 14, 1998, the commissioner filed petitions for the termination of the respondents' parental rights regarding D and K on the grounds that (1) each child had been adjudicated neglected in a prior proceeding and the respondent parents had failed to achieve personal rehabilitation pursuant to § 17a-112 (c) (3) (B) and (2) each "child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being" pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (C). The commissioner further alleged that the respondent mother's parental rights as to K should be terminated because, pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (E), K was a neglected child under the age of seven years, the respondent has failed to achieve personal rehabilitation and the respondent mother's rights to another child were previously terminated.[5] The commissioner then filed a motion to consoli-

---

[5] The respondent mother's parental rights were terminated as to two other children on April 29, 1982.

date the neglect and termination of parental rights petitions, which was granted on September 16, 1998.

A three day trial ensued in June, 1999. At the trial, the court heard testimony from department workers and supervisors, psychologist Bruce Freedman, the respondent father, police officers and the respondents' substance abuse counselors, among others. On July 22, 1999, in its memorandum of decision, the court determined that D and K were neglected and that "[t]he fighting, physical abuse, intoxication of both parents and heroin abuse by the mother rendered [the respondents] unable to provide a safe and nurturing home for their children."

The court further found that the commissioner had proved by clear and convincing evidence that D and K are minor children who already have been adjudicated neglected and that the respondent father had "failed to achieve such degree of personal rehabilitation, considering the age and needs of [D and K], respectively, as would encourage the belief that he could assume a responsible position in either of their lives." As to the respondent mother's parental rights in K, the court concluded that the commissioner had "proven by clear and convincing evidence that [K] was under age seven years at the filing of the petition, and had already been adjudicated neglected, and her mother . . . has failed to achieve such degree of personal rehabilitation, considering the age and needs of [K], as would encourage the belief that she could assume a responsible position in the life of [K], and [respondent mother's] parental rights of two other children were previously terminated . . . ." The court also found that the commissioner had "proven by clear and convincing evidence that [D] has previously been adjudicated neglected and his mother . . . has failed to achieve such degree of personal rehabilitation, considering the age and needs of [D] as would encourage the belief that she could assume a responsi-

ble position in [D's] life." The court then ordered that the parental rights of the respondent mother and respondent father as to D and K be terminated. These appeals followed.[6]

Additional facts will be discussed where relevant to the particular issues raised.

I

The respondents present several challenges to the trial court's finding that they failed to achieve personal rehabilitation within the meaning of § 17a-112 (c) (3) (B). The respondents first claim that the court improperly granted coterminous petitions for neglect and the termination of parental rights based on their failure to achieve personal rehabilitation. Further, the respondents contend that the court improperly denied the respondent father's motion to strike references to their failure to rehabilitate. The respondents also argue that the court's finding that they failed to achieve personal rehabilitation is clearly erroneous and that the court improperly applied a standard of permanent rehabilitation. Next, the respondents claim that the court's finding that they failed to achieve personal rehabilitation was improper because the court improperly considered during the adjudicatory phase of the hearing evidence of events occurring subsequent to the date that the termination petitions were filed. The respondents' final contention is that the court improperly found that they had failed to achieve personal rehabilitation when the court failed to provide specifics steps to reunite the family in violation of § 46b-129. We are not persuaded by any of these claims.

"Our statutes define the termination of parental rights as the complete severance by court order of the legal

---

[6] As previously stated, the respondent mother has not appealed from the trial court's termination of her parental rights with regard to K. See footnote 2.

relationship, with all its rights and responsibilities, between the child and his parent . . . ." (Internal quotation marks omitted.) *In re Michael M.*, 29 Conn. App. 112, 117, 614 A.2d 832 (1992), quoting General Statutes (Rev. to 1989) § 45-61b (g). In accordance with § 17a-112, "[a] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 364, 730 A.2d 106 (1999), quoting *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998). The termination of parental rights "is a most serious and sensitive realm of judicial action." (Internal quotation marks omitted.) *In re Michael M.*, supra, 117.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Hector L.*, supra, 53 Conn. App. 364, quoting *In re Roshawn R.*, supra, 51 Conn. App. 51. "[G]reat weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *In re Steven N.*, 57 Conn. App. 629, 632–33, 749 A.2d 678 (2000).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually

supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Hector L.*, supra, 53 Conn. App. 364–65, quoting *In re Christina V.*, 38 Conn. App. 214, 220, 660 A.2d 863 (1995).

A

In the first part of their claim, the respondents contend that the court improperly granted coterminous petitions on the ground of failure to achieve personal rehabilitation, thereby depriving them of a meaningful opportunity to achieve rehabilitation. The respondents maintain that the court's reliance on prior adjudications of neglect was improper and that the failure to achieve personal rehabilitation cannot form the basis for termination in these coterminous proceedings. We disagree.[7]

Section 17a-112 (c) sets out the "situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent." (Internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 689, 741 A.2d 873 (1999), quoting *In re Anna B.*, 50 Conn. App. 298, 303–304, 717 A.2d 289 (1998). Pursuant to § 17a-112 (c) (3) (B), one of the circumstances warranting the termination of parental rights is when, over an extended period of time, "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as

---

[7] Our conclusion that the coterminous petitions were appropriate effectively disposes of the respondents' claim that the court improperly denied the motion to strike portions of the petitions referring to the failure to achieve personal rehabilitation.

would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." Coterminous petitions are authorized by General Statutes (Rev. to 1997) § 17a-112 (f), which provides in relevant part that "[a]ny [neglect] petition brought by the Commissioner of Children and Families to the Superior Court . . . may be accompanied by or, upon motion by the petitioner, consolidated with a petition for termination of parental rights filed in accordance with this section with respect to such child. . . ." "It is clear that 'this section' refers to § 17a-112 in general. That would include subsection (b) [now subsection (c)] which lists the 'failure to rehabilitate' as a ground for termination." *In re Felicia D.*, 35 Conn. App. 490, 497, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). Coterminous petitions based on the failure to rehabilitate are frequently brought before the trial court. See *In re Shyliesh H.*, 56 Conn. App. 167, 172, 743 A.2d 165 (1999); *In re Felicia D.*, supra, 497.

In arguing that the court improperly granted coterminous petitions on the basis of their failure to achieve personal rehabilitation, the respondents rely on *In re David W.*, 52 Conn. App. 576, 727 A.2d 264 (1999), rev'd on other grounds, 254 Conn. 676, 759 A.2d 89 (2000). In that case, the respondents' infant child was admitted to the hospital with life threatening injuries. The respondents had exclusive control and custody of the child immediately preceding his injuries. After the child was discharged from the hospital, he was placed in the care of the department, which obtained an order of temporary custody. The respondents pleaded nolo contendere to the neglect petition that had been filed by the department, and the court adjudicated the child to be neglected pursuant to General Statutes (Rev. to 1993) § 46b-129 (d). The court, relying on General Statutes

(Rev. to 1995) § 17a-112 (b) (2)[8] and (3),[9] granted the commissioner's subsequent petition for the termination of the respondents' parental rights.

On appeal, the respondents in *In re David W.* argued that the doctrine of res judicata barred the court's reliance on § 17a-112 (b) (2), which requires a prior adjudication that the child has been neglected or uncared for. Specifically, they argued that the court's decision should be reversed because of the failure of the department to seek termination in the neglect proceeding in which the department had sought custody of the child after learning of the injuries that he had sustained while living with his parents. We disagreed with the respondents in that case, concluding, in relevant part, that "[a]lthough General Statutes (Rev. to 1995) § 17a-112 (e) does provide that a neglect petition 'may be accompanied by or, upon motion by the petitioner, consolidated with a petition for termination of parental rights,' that procedure is not mandatory but optional on the part of the commissioner. When § 17a-112 (b) (2) is the ground for termination, the requirement that the adjudication of neglect occur 'in a prior proceeding' indicates that the termination proceeding may not be combined with the neglect proceeding and that separate

[8] Pursuant to General Statutes (Rev. to 1995) § 17a-112 (b) (2), the trial court may terminate parental rights if "the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[9] Pursuant to General Statutes (Rev. to 1995) § 17a-112 (b) (3), the trial court may terminate parental rights on the ground that "the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prime facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ."

judgments on each petition are necessary. The mandatory findings required by § 17a-112 (d) concerning the services to be provided to the parent of a child found to have been neglected and the efforts of such a parent to adjust his conduct so that reunification with the child might be achieved could not be made unless there was sufficient time between the judgment on the neglect petition and the hearing on the termination petition to make the studies needed to present the evidence for the prescribed findings. We conclude that, because our statutes require those findings, there must be a sufficient hiatus for that purpose between the adjudications of neglect and termination petitions and, accordingly, the termination judgment in this case is not barred by the prior judgment on the neglect petition. Each petition pertains to a separate transaction and, therefore, the doctrine of res judicata is not applicable." *In re David W.*, supra, 52 Conn. App. 583–84.

Here, the respondents appear to argue that according to *In re David W.*, supra, 52 Conn. App. 576, the court should have adjudicated D and K neglected in a separate, autonomous proceeding before reaching the merits of the termination petitions in the present case. The respondents claim that although D and K were adjudicated neglected and committed to the custody of the commissioner more than once prior to 1998, the fact that the commissioner returned the children to the respondents after the prior findings of neglect is proof of their rehabilitation. They therefore argue that a new adjudication of neglect is required before the court may terminate their parental rights. We disagree.

Each time that D and K were taken from the respondents' care, the court ordered expectations for the respondents to follow to facilitate the reunification of this family. Since 1990, the court has issued numerous expectations demanding, in part, that the respondents remain substance free. The court heard evidence that

the respondents had failed to achieve personal rehabilitation by repeatedly falling back into the cycle of addiction, and that this cycle was detrimental to the well-being of the children.

The concerns expressed in *In re David W.* regarding a sufficient amount of time for a parent to attempt rehabilitation after an adjudication of neglect were more than satisfied in this case. Here, the respondents were given several opportunities to prove that they had rehabilitated after the children were returned to them, but they were unable to do so and continually resumed abusing alcohol and other substances. We therefore conclude that the court properly granted the coterminous petitions on the basis of failure to achieve personal rehabilitation.

## B

The respondents next claim that the court's finding that they had failed to achieve personal rehabilitation is clearly erroneous. We disagree.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 705–706.

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former con-

structive and useful role as a parent." (Internal quotation marks omitted.) *In re Michael M.*, supra, 29 Conn. App. 124. "[Section 17a-112] requires the trial court to analyze the [parents'] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [that the parents have] achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [they] can assume a responsible position in [their] child's life." (Internal quotation marks omitted.) *In re Sarah Ann K.*, 57 Conn. App. 441, 448, 749 A.2d 77 (2000). "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, supra, 56 Conn. App. 180. As part of the analysis, the trial court must "obtain a historical perspective of the respondent's child caring and parenting abilities," which includes prior adjudications of neglect, substance abuse and criminal activity. *In re Sarah Ann K.*, supra, 449.

Our review of the record reveals that there is substantial evidence supporting the trial court's conclusion that the respondents had failed to achieve a level of personal rehabilitation sufficient to warrant the belief that, within a foreseeable and reasonable time, the respondents would be capable of assuming a responsible position in the lives of their children. The court found that the respondents each have a long personal history of alcohol abuse and that the mother has abused drugs for all of her adult life. Since the birth of their children, the respondents have abused alcohol and substances in the home, in front of D and K, and often have engaged in domestic violence.

For the past decade, the respondents have participated in various substance abuse treatment programs, voluntarily and those arranged by the department, to no avail. Despite attending alcohol and substance abuse treatment programs, the respondents have continually relapsed and resumed abusing alcohol and drugs shortly after returning from those rehabilitation programs. The respondent mother has stated that her longest period of sobriety in her adult life has been twenty-one months, while the respondent father claimed that he was once sober for twenty-two consecutive months. The respondent mother additionally revealed to the department that while the children were in her care from June, 1997, until June, 1998, she had consumed illicit substances numerous times per week.

As a result of the respondents' persistent alcohol and substance abuse, D has been adjudicated neglected twice (not including the present adjudication of neglect) and has been removed from the respondents' home on four occasions for extended periods of time. In fact, D was born prematurely due to the respondent mother's overdosing on heroin. K has been adjudicated neglected once (not including the present adjudication) and has been removed from the respondents' care on three occasions for many months at a time. Throughout their lives, D and K have witnessed and have been the victims of the respondents' substance abuse and domestic violence.

After reviewing the court's decision and the record, we conclude that there was sufficient evidence to support the court's conclusion, by clear and convincing evidence, that the respondents had failed to reach such a degree of personal rehabilitation as would encourage the belief that, within a reasonable period of time, they could assume a responsible position in the lives of their children. We cannot say that the court's conclusion in this regard was clearly erroneous.

C

The respondents next claim that the court improperly held them to a standard of complete rehabilitation in finding that they failed to achieve personal rehabilitation. We disagree.

As stated previously, § 17a-112 "requires the trial court to analyze the [parents'] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 706. In great detail, the court acknowledged and described the respondents' attempts at rehabilitation and attendance of treatment programs for substance abuse. Nonetheless, the court found that despite the respondents' efforts, since the birth of their children they have been unable to maintain their sobriety and do not appear to be able to maintain their sobriety at any time in the foreseeable future. Given that the respondents relapsed after every attempt at gaining sobriety, the court found that the respondents' rehabilitation was not foreseeable within a reasonable time. The respondents fail to point to any language in the court's memorandum of decision indicating that the court held their rehabilitation to an elevated standard. Moreover, our review of the memorandum of decision demonstrates that the court applied the appropriate standard in determining whether rehabilitation was foreseeable. Accordingly, this claim is without merit.

D

The respondents next claim that the court improperly found that they failed to achieve personal rehabilitation because, in deciding the adjudicatory phase of the hearing, the court took into account events occurring after the date that the termination petitions were filed. We disagree.

As stated previously, "[i]n the adjudicatory phase of the proceeding, the court must decide whether there is clear and convincing evidence that a statutory ground for the termination of parental rights exists." *In re Stanley D.*, 61 Conn. App. 224, 230, 763 A.2d 83 (2000). Pursuant to Practice Book § 33-3 (a), in deciding the adjudicatory phase of the hearing for the termination of parental rights, the trial court's inquiry is limited to the events and facts preceding the filing of the petition for the termination of parental rights.

Here, as the court properly stated, during the adjudicatory phase it was limited to considering facts and evidence occurring before May 14, 1998, the date that the termination petitions were filed. In their brief, the respondents do not refer to any specific portion of the court's memorandum of decision that indicates that during the adjudicatory phase of the hearing, the court considered events occurring after May 14, 1998. In fact, the respondents fail to point to any language in the memorandum of decision demonstrating that the court relied on facts improperly introduced during the adjudicatory phase. After reviewing the record and the memorandum of decision, it is apparent that in the adjudicatory phase of the hearing the court relied solely on events occurring prior to May 14, 1998. Further, we conclude that the court accurately stated in its decision that "[o]nly evidence relevant to adjudication dates [was] considered as a part of adjudication findings on the neglect and termination petitions." Accordingly, this claim is without merit.

E

The respondents next contend that the court improperly granted coterminous petitions based on failure to achieve personal rehabilitation because they were not provided with specific steps to facilitate the return of

D and K to their custody in violation of § 46b-129 (b).[10] Specifically, the respondents claim that the coterminous petitions prevented them from receiving notice of the actions needed to achieve personal rehabilitation. We disagree.

In *In re Sarah Ann K.*, supra, 57 Conn. App. 441, this court addressed a similar issue. In that case, the child was adjudicated neglected in 1995. One year later, the commissioner filed a petition to terminate the respondent's parental rights. Finding that the department had failed to make reasonable efforts to reunify the respondent with his child, the trial court declined to terminate the respondent's parental rights and ordered specific expectations for the respondent to fulfill. In 1998, after the commissioner filed a second termination petition, the trial court terminated the respondent's parental rights to his child on the ground that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the respondent could assume a responsible position in the life of the child.

On appeal, the respondent in *In re Sarah Ann K.* claimed that the trial court improperly terminated his parental rights because he was not provided with specific steps to facilitate the return of his child. Concluding that the trial court in fact had provided the respondent with specific steps, we stated that "[s]pecific steps the parent may take to facilitate the return

[10] General Statues (Rev. to 1997) § 46b-129 (b) provides in relevant part: "If the court, pursuant to this subsection, vests in a suitable agency or person the child's or youth's temporary care or custody, the court shall provide to the commissioner and the parent of the child or youth specific steps which the parent may take to facilitate the return of the child or youth to the custody of such parent. If the court, after a show cause hearing pursuant to this section, maintains the custody of the child or youth in the parent, the court may provide to the commissioner and the parent specific steps which the parent may take to maintain custody of the child or youth."

of the child were required to have been provided to the respondent in the prior neglect proceeding pursuant to General Statutes (Rev. to 1997) § 46b-129 (b). . . . That statute, however, does not require that the parent again be provided specific steps to take to facilitate the return of the child before a termination petition may be granted." (Citation omitted.) *In re Sarah Ann K.*, supra, 57 Conn. App. 445.

In the present case, as a result of the respondents' substance and alcohol abuse over the past decade, D has been removed from their care four times, while K was removed three times. Further, D has been adjudicated neglected twice, and K also has been adjudicated neglected once. Each time that D and K were removed from the respondents' care, the trial court ordered expectations, requiring, in part, that the respondents seek substance and alcohol abuse treatment, and remain sober. Upon the return of the children to the respondents' care, the court again, on several occasions, ordered expectations demanding, in part, that the respondents remain sober and refrain from abusing substances and alcohol.

Upon granting the coterminous petitions in 1998, the court was not required once again to provide specific steps to facilitate the return of D and K to the respondents. See id. For the past decade, the department and the trial court have informed the respondents that to keep their family intact, they must remain sober and cease abusing substances and alcohol. The respondents' cycle of relapses and continued addiction has been the root of the department's and the court's involvement with the respondents since the births of D and K.

Given the numerous expectations that the trial court has ordered over the past decade, the respondents were well aware of the kind of behavior and actions necessary to maintain their relationship with D and K. Accord-

ingly, the respondents' claim that the court improperly failed to provide them with specific steps to facilitate the return of their children is without merit.

II

The respondents next present several challenges to the court's finding that the department made reasonable efforts to reunite their family. The respondents contend that the court improperly found that the department made reasonable efforts to reunite their family in violation of state law; General Statutes (Rev. to 1997) § 17a-112 (c) (1);[11] thereby shifting the burden to reunite onto the respondents; federal law; and their state and federal due process rights. We are not persuaded.

As stated previously, "[t]he determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Hector L.*, supra, 53 Conn. App. 364–65.

"It is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [General Statutes] § 17a-112 (c) (1)." (Internal quotation marks omitted.) *In re Amanda A.*, 58 Conn. App. 451, 454, 755 A.2d 243 (2000). "Before a termination of paren-

[11] Pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (1), in granting a petition to terminate parental rights, the trial court must, in part, "[find] by clear and convincing evidence . . . that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ."

tal rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the [children with the] family. The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id., 455, quoting *In re Antonio M.*, 56 Conn. App. 534, 546, 744 A.2d 915 (2000). The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. *In re Tabitha T.*, 51 Conn. App. 595, 600, 722 A.2d 1232 (1999).

## A

The respondents claim that the court improperly found that the department made reasonable efforts to reunify the family, in violation of § 17a-112 (c). Specifically, the respondents argue that the trial court's finding of reasonable efforts at reunification was incorrect because the department failed to implement any efforts to reunify the family subsequent to the removal of the children from their care in April, 1998. We disagree.

As stated previously, "[r]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id. Notwithstanding the fact that the department declined to pursue reunifi-

cation as a goal after the removal of the children from the respondents' care in April, 1998, a close review of the record reveals that the department pursued reasonable efforts to keep this family together. The court found that during the past decade, on each occasion that D and K were either removed from the respondents' home or adjudicated neglected the department pursued the goal of reuniting the family. From the beginning of its involvement with the respondents in 1989, the department provided the respondents with recommendations for achieving sobriety and remaining substance free. In its memorandum of decision, the court listed over twelve substance abuse programs to which the respondents had been referred by the department since 1989. Further, throughout the years, the department has provided the respondents with support services, including, but not limited to, visiting nurse services when D was an infant and the 4 C's parent aide program.

Although the respondents have participated in most of the department's recommended programs, despite the department's efforts and services the respondents have continually relapsed and resumed abusing substances and alcohol. As the respondents have failed to benefit from any of the programs and services that the department has provided, it was not unreasonable for the department to decline to pursue reunification as a goal after the children were removed in April, 1998. Further, the disinclination of the department to pursue reunification does not eradicate all of the department's prior efforts to keep the respondents' family intact.

The dissolution of this family resulted from the respondents' cycle of alcohol and substance abuse and not from the failure of the department to provide services and assistance. "[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal

quotation marks omitted.) *In re Antonio M.*, supra, 56 Conn. App. 547, quoting *In re Hector L.*, supra, 53 Conn. App. 372. Given the extensive opportunities that the department afforded to the respondents over the past decade, we agree with the trial court that there was clear and convincing evidence that the department has made reasonable efforts to reunite this family.

We find no merit to the respondents' additional claim that the department's failure to provide services to reunify the family shifted the burden to reunite onto the respondents. In so holding, we note the trial court's statement that "[i]t was the parents' duty to rehabilitate so that reunion could occur." On the basis of our conclusion that the department engaged in reasonable efforts to reunify this family, it was proper for the department to decline to pursue reunification after the children were removed in April, 1998.

B

The respondents next claim that the department's failure to provide efforts to reunify their family violated federal law, specifically, the Adoption Assistance and Child Welfare Act of 1980 (act), 42 U.S.C. § 670 et seq.[12] This claim is also without merit.

[12] Section 671 (a) of title 42 to the United States Code provides in relevant part: "In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which—

\* \* \*

"(15) provides that—

"(A) in determining reasonable efforts to be made with respect to a child, as described in this paragraph, and in making such reasonable efforts, the child's health and safety shall be the paramount concern;

"(B) except as provided in subparagraph (D), reasonable efforts shall be made to preserve and reunify families—

"(i) prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and

"(ii) to make it possible for a child to safely return to the child's home . . . ."

"The act . . . is an appropriations act and does not apply to individual actions or judicial findings . . . but merely sets forth general guidelines for a state's continued eligibility to receive funds for foster care maintenance. *In re Cynthia A.*, 8 Conn. App. 656, 664, 514 A.2d 360 (1986). The act, therefore, has no bearing on the question of whether, under § 17a-112, the commissioner was required to establish, as a predicate to the termination of [the respondent's] parental rights, that the department had made reasonable efforts to reunite [the respondent] with [the children]." (Internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 693. Accordingly, this claim lacks merit.

C

The respondents further contend that the termination of their parental rights violated their rights to a familial relationship as guaranteed by the federal and state constitutions because the department failed to make reasonable efforts at reunification.

"The right to the integrity of the family is among the most fundamental rights guaranteed by the fourteenth amendment. . . . With respect to the respondent's claim that the department prevented reunification, we note that a state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected under the due process clause." (Citation omitted; internal quotation marks omitted.) *In re Lauren R.*, 49 Conn. App. 763, 775, 715 A.2d 822 (1998). In this case, however, the record does not support the respondents' contention.

On the basis of our conclusion that the trial court's finding that the department made reasonable efforts at reunification pursuant to § 17a-112 (c) was proper, we find it unnecessary to address this constitutional claim. See *In re Mariah S.*, 61 Conn. App. 248, 268–69, 763

A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001).

## III

The respondents next claim that the court violated their due process rights in denying their motions for independent psychological evaluations.[13]

The following additional facts are pertinent to this claim. On September, 16, 1998, the court granted the department's motion for a psychiatric evaluation of the respondents in order to help determine the best interests of the children. Bruce Freedman, a clinical psychologist, conducted the psychiatric evaluations of the respondents. On December 29, 1998, the respondents filed motions for independent psychiatric evaluations, which the trial court duly denied. In denying the respondents' motions, the court concluded that because independent psychiatric evaluations of the respondents had recently been conducted, it would be unnecessary to grant additional independent psychiatric evaluations.

"A court-ordered psychological evaluation of a parent will often be necessary to determine the best interest of the child. . . . [H]owever, whether to order such an evaluation is entirely within the court's discretion." *Janik* v. *Janik*, 61 Conn. App. 175, 182, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001). The trial court's decision whether to order a psychological evaluation in a termination of parental rights proceeding will not be disturbed unless that judicial discretion was clearly abused. *In re David E.*, 4 Conn. App. 653, 658, 496 A.2d 229 (1985).

---

[13] General Statutes (Rev. to 1997) § 45a-717 (d) provides in relevant part: "Upon finding at the hearing or at any time during the pendency of the petition that reasonable cause exists to warrant an examination, the court . . . may . . . order examination of a parent or custodian whose competency or ability to care for a child before the court is at issue. . . ."

The respondents fail to demonstrate that the trial court's denial of their motions for independent psychological evaluations constituted a clear abuse of judicial discretion. Merely a few months before the respondents filed their motions, the court ordered independent psychological evaluations, and the respondents were soon thereafter examined. Nothing in the record suggests, nor have the respondents claimed, that the psychologist conducted an improper or biased evaluation of them. Accordingly, the respondents' claim must fail.

IV

The respondents next claim that the court's conclusion that the termination of their parental rights was in the best interests of their children was clearly erroneous. In arguing that the court's determination was clearly erroneous, the respondents challenge each of the court's findings made pursuant to § 17a-112 (e).[14] We disagree.

[14] General Statutes (Rev. to 1997) § 17a-112 (e) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with

General Statutes (Rev. to 1997) § 17a-112 (c) (2) requires that the trial court find by clear and convincing evidence that termination is in the best interests of the children before it can terminate parental rights. In determining whether termination is in the best interests of the children, the trial court must consider and make written findings regarding the seven factors set forth in § 17a-112 (e). *In re Tabitha P.*, 39 Conn. App. 353, 362, 664 A.2d 1168 (1995). On appeal, we will overturn the trial court's decision that the termination of parental rights is in the best interests of the children only if the trial court's findings are clearly erroneous. Id.

The trial court, in its memorandum of decision, made specific findings regarding the seven statutory factors necessary to determine that the termination of parental rights was in the best interests of the children. The court's findings can be summarized as follows. The court found that the department facilitated regular visits between the respondents and their children. Over the years, the department had provided the respondents with numerous referrals to substance abuse programs and family services, and to more than one dozen treatment centers. Finding that the department had made reasonable efforts to reunite the family, the court stated: "[The department has] made over the time of [its] involvement with this family, since 1989, regular and sustained efforts to reunite this family, which resulted in three different reunifications over the last decade."

Regarding the terms of any applicable court order and the parties' obligations, the court found that prior proceedings involving the respondents resulted in court-ordered expectations and that the respondents had failed to meet those expectations. In particular, the

the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

court noted that the respondents had been ordered on numerous occasions not to abuse substances, but that "both have relapsed, over and over again, including this year." As for the relationships between D and K and the respondents, the court discovered that both children have emotional ties to their parents, but that D fears their addictions, and K refers to her foster parents as "mom" and "dad." In addition, the court took into account the ages of the children.

Further, the court found that although the respondents regularly visit with D and K, they had failed to adjust their circumstances to warrant the return of their children to their care. The respondents relapsed in April, 1998, and since then they have been unable to maintain their sobriety. Because of the respondents' unabated substance abuse, the court came to an "absolute conclusion that neither of them could be ready to take care of these children any time in the foreseeable future. . . . These children cannot wait out the rest of their youth waiting for their parents to do what they have not achieved to date and have no plan or timetable for in the foreseeable future." Finally, the court noted that there was no evidence that either the department, third parties or economic reasons had prevented the respondents from maintaining meaningful relationships with D and K.

After reviewing the detailed decision of the court and the evidence contained in the record, we conclude that the court's finding that the termination of the respondents' parental rights was in the best interests of D and K is not clearly erroneous.

V

The respondents' final claim is that the court abused its discretion in denying their motions for contempt, which they based on the commissioner's alleged failure to comply with visitation orders. We disagree.

The following additional facts are relevant to this claim. On October 5, 1998, the trial court granted the respondents' motion for visitation and ordered weekly, two hour visitation under the supervision of the department. The supervised visits generally occurred on Saturdays. The week of a scheduled June 12, 1999 Saturday visit, the department received information that the respondents were abusing alcohol and engaging in domestic violence. On June 11, 1999, the day before the scheduled visit, the department notified the respondents that unless they could demonstrate that they were substance free, the scheduled visit would be canceled due to the reports. The respondents failed to provide confirmation of their sobriety, and the June 12, 1999 visit was canceled.

In response, the respondents each filed motions for contempt on June 15, 1999, based on the department's cancellation of the scheduled visit on June 12, 1999. The court denied the respondents' motions for contempt.

Civil contempt involves the wilful failure to comply with an applicable court order. *Marcil* v. *Marcil*, 4 Conn. App. 403, 405, 494 A.2d 620 (1985). Before finding a person in contempt for the wilful violation of a court order, the trial court must consider the circumstances and facts surrounding the violation. *Wilson* v. *Wilson*, 38 Conn. App. 263, 275–76, 661 A.2d 621 (1995). "The fact that the order had not been complied with fully, however, does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." *Marcil* v. *Marcil*, supra, 405. On review, every reasonable presumption will be made in favor of the trial court in exercising its discretion. *Meehan* v. *Meehan*, 40 Conn. App. 107, 111, 669 A.2d 616, cert. denied, 236 Conn. 915, 673 A.2d 1142 (1996).

Here, the court found that the department adequately explained its failure to comply with the court-ordered visitation. In denying the respondents' motions for contempt, the court stated: "While [the department's] conduct violated the strict language of the court order as to both the mother and, certainly, the father, under the circumstances, this court does not find that [the department's] violation of the court order was wilful. It was the intention of [the department] to safeguard the children and still allow visitation, even if somewhat delayed. It was not [the department's] intention to deprive the parents of visitation." We therefore conclude that the court did not abuse its discretion in denying the respondents' motions for contempt.

The judgments are affirmed.

In this opinion the other judges concurred.