[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR CONTEMPT (#195)
On June 13, 2001, the defendant, Kings West Limited Partnership (KWLP), filed this motion for contempt against CB Commercial/Hampshire, CT Page 15025 LLC (CB), the receiver of rents appointed during the mortgage foreclosure of a commercial office building owned by KWLP.[1] The facts relevant to the disposition of this motion are as follows. By order of this court dated April 7, 1997, CB was discharged as receiver of rents, subject to the filing of a final accounting and return of receivership funds to the clerk of the court. On August 18, 1997, CB filed the accounting, showing a remaining cash balance in the receivership of $79,804.34, and requesting that the court dismiss it from its charge. By memorandum of decision dated February 24, 1998, the court disallowed two items in the final accounting, the payment of a $56,459.27 lease commission and $8480 in management fees. On September 18, 1998, the court rendered an order approving CB's final accounting but modified substantially to reflect the two disallowed expense items. The order provided "[t]hat upon payment of this sum, [$144,311.61], to the clerk of this court, the receiver shall be discharged of his obligations as such and surety on receiver's bond shall be discharged. . . ." (CB's Memorandum, Exhibit E.)
CB unsuccessfully appealed the court's order, first by direct appeal, which was dismissed because CB was not a party to the underlying foreclosure action, and then by writ of error. Security Mutual Ins. Co.of New York v. Kings West Ltd. Partnership, 56 Conn. App. 44, 45-46,741 A.2d 329 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000); CBCommercial/Hampshire, LLC v. Security Mutual Ins. Co. of New York,61 Conn. App. 144, 763 A.2d 32 (2000), cert. denied, 255 Conn. 940,767 A.2d 1211 (2001).
On June 1, 2001, CB remitted the sum of $77,000.10 to the clerk of this court. On June 14, 2001, KWLP filed a motion for an order of distribution of the remitted funds together with a motion for contempt against CB, alleging that CB had "failed to comply with the order of this court of September 18, 1998, requiring a remittance of $144,311.61." (Motion, p. 2.) KWLP requested that the court order CB to purge itself of contempt by paying the balance due on the $144,311.61, together with interest, pursuant to General Statutes § 37-3a,[2] on $79,804.34 at the rate of 10% per annum from April 7, 1997 to September 18, 1998, and on $144,311.61 at the rate of 10% per annum from September 18, 1998 to the date of remittance of the entire sum due. (Motion, p. 3.) On July 19, 2001, CB deposited with the clerk of this court $67,111.51, the balance due under the September 18, 1998 order. In a memorandum of law dated July 23, 2001, KWLP acknowledges CB's July 19, 2001 remittance of the receivership funds, but urges the court to adjudge CB in contempt nonetheless and order that it purge itself of contempt by paying accrued interest on the funds in the amount of $40,110.59. (KWLP's Memorandum, pp. 4-5.)
CB makes several arguments in opposition to KWLP's motion for CT Page 15026 contempt. First, CB argues that it never violated the September 18, 1998 order because the order merely approved the accounting submitted by the receiver and did not direct the deposit of the receivership account with the clerk of the court nor order the receiver to use its own funds to replenish the receivership for the disallowed expenses. (CB's Memorandum, p. 4.) CB adds that if the September 19, 1998 order was in fact an order to deposit $144,311.61 with the court, CB's noncompliance was not willful. Instead, CB argues, it was merely following the advice of counsel, which advised CB that the September 18, 1998 order was not a directive to pay $144,311.61 nor did it require CB to use its own funds to replenish the receivership account for the disallowed expenses. (CB's Memorandum, p. 5.) CB further argues that before a receiver can be required to replenish a receivership with its own funds, there must first be a hearing where it is established that the receiver committed fraud or negligence. (CB's Memorandum, p. 5) Finally, CB argues that KWLP's motion for contempt is moot in so much as CB purged itself of any contempt when it deposited $144,311.61 with the clerk. (CB's Memorandum, p. 6.)
CB also makes several arguments against KWLP's claim for compensatory interest. First, CB asserts that it had a right to seek appellate review of the court's disallowance of the two expense items and, therefore, cannot be deemed to have wrongfully detained the receivership funds during the pendency of that appeal. (CB's Memorandum, pp. 6-7.) Second, CB argues that there has yet to be an order of distribution of the receivership funds in this case on account of ongoing litigation between KWLP and cross-claim defendant, Sotovento.[3] Thus, even if the funds had been deposited with the clerk in 1998, KWLP's right to the money has yet to be determined. (CB's Memorandum, p. 7.) Moreover, CB argues, under General Statutes § 51-52 (e),[4] all interest earned on money held by the clerk of the court accrues to the benefit of the state. Accordingly, even if the court determines at some future date that KWLP is entitled to the receivership funds, there would be no award of interest and "KWLP is simply seeking a windfall at CB's expense." (CB's Memorandum, p. 7.)
"To find a party in contempt, a trial court must conclude that a party has disobeyed an order of the court. Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him." (Internal quotation marks omitted.) Castro v. Castro, 31 Conn. App. 761, 764, 627 A.2d 452 (1993). "Civil contempt involves the wilful failure to comply with an applicable court order. Before finding a person in contempt for the wilful violation of a court order, the trial court must consider the circumstances and facts surrounding the violation. The fact that the order had not been CT Page 15027 complied with fully, however, does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's Order." (Citations omitted; internal quotation marks omitted.) In re Daniel C., 63 Conn. App. 339, 369,776 A.2d 487 (2001). To effectuate the purpose of civil contempt, the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree." Connolly v. Connolly,191 Conn. 468, 482, 464 A.2d 837 (1983) "[I]n civil contempt proceedings, the contemnor must be in a position to purge himself Otherwise the sanction imposed would cease to be remedial and coercive but would become wholly punitive in actual operation." Mays v. Mays,193 Conn. 261, 266, 476 A.2d 562 (1984).
KWLP's motion for contempt should be denied on several grounds. First, "[a] civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party. . . ." (Emphasis added.) Castro v. Castro, supra, 31 Conn. App. 764. As previously noted, claims against the receivership funds in this case are still pending. There has been no order of final distribution. KWLP cannot claim, therefore, that CB's conduct, contemptuous or not of the September 18, 1998 order, was directed against KWLP's rights since it has yet to be determined whether KWLP has any rights to the funds at issue. "An order for the final distribution of the assets of the estate [can] only properly be made when all claims against the estate . . . [have] been adjudicated." Stolman v. Boston Furniture Co., 120 Conn. 235, 241-42,180 A. 507 (1935). Moreover, a receiver of rents is not an "opposing party" to the underlying action but, rather, functions as an arm of the court. "When a receiver is appointed in a foreclosure action to take charge of the property, he holds it as an arm of the court and the funds in his hands are available to the court for distribution to those rightfully entitled to them. . . ." Hartford National Bank Trust Co.v. Tucker, 195 Conn. 218, 225, 487 A.2d 528 (1985). "A receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without the leave of the court whose officer he is, granted in the cause in which he was appointed. He is presumed to be acting according to the will of that court. The question of whether the court will permit its receiver to be sued is largely a matter of discretion. There is no reason why the Superior Court, being in possession of the property and able to administer full relief to the petitioner, should allow him to bring another action in the same court."Summerbrook West, L.C. v. Foston, 56 Conn. App. 339, 344, 742 A.2d 831
(2000). KWLP's motion for contempt is, for all practical purposes, an action to recover damages against a receiver for compensatory interest on receivership funds, brought against the receiver without leave of the court, and should therefore be denied. CT Page 15028
The motion should also be denied because it is moot. Assuming,arguendo, that the court's September 18, 1998 approval of the receiver's final accounting was an order directing CB to deposit $144,311.61 with the clerk of the court, CB purged itself of contempt by its remittance of the entire sum on July 19, 2001. The purpose of an adjudication of contempt is to coerce the contemnor into compliance with the judicial order. "[T]he contempt is civil when the fine is conditional and coercive and when the contemnor can obtain release from the sanction by compliance with the judicial decree." McTigue v. New London Education Assn.,164 Conn. 348. 353, 321 A.2d 462 (1973). Having already purged itself by depositing the receivership funds with the clerk, there is nothing more CB can do to bring itself into compliance with the court's September 18, 1998 order. KWLP motion for contempt against CB is therefore moot and, accordingly, should be denied.
KWLP's claim for prejudgment interest on the receivership funds finds no support in the law. "Pursuant to General Statutes § 37-3a, prejudgment interest is awarded in the discretion of the trial court to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. The detention of the money must be determined to have been wrongful. Its detention can only be wrongful, however, from and after the date on which the court, in its discretion, determines that the money was due and payable." (Citations omitted; internal quotation marks omitted.) Northrop v. Allstate Ins. Co., 247 Conn. 242, 254-55,720 A.2d 879 (1998). "The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." (Internal quotation marks omitted.)Rapin v. Nettleton, 50 Conn. App. 640, 651, 718 A.2d 509 (1998).
KWLP cannot state a claim for compensatory interest for the simple reason that there is no order of distribution awarding KWLP any of the receivership funds; the money does not rightfully belong to KWLP. Compensatory interest is awarded on money wrongfully detained from a prevailing party after it was "due and payable." Northrop v. AllstateIns. Co., supra, 247 Conn. 255. Moreover, the allowance of compensatory interest is an equitable remedy, suitable when the "demands of justice" require. Rapin v. Nettleton, supra, 50 Conn. App. 651. During the entire time CB retained the receivership funds, those funds were neither due nor payable to KWLP, and thus the demands of justice and equity are not implicated. Moreover, under § 51-52 (e), all interest and earnings on monies deposited with the clerk of the court "belong to and accrue to the benefit of the state." Thus, even if CB had deposited $144,311.61 with CT Page 15029 the clerk on September 18, 1998, the date of the court's approval of the final accounting, interest earned on the money since that time would not belong to the estate but, rather, to the state. Finally, even if the court were to determine that the September 18, 1998 approval of the final accounting was a directive for CB to deposit the receivership funds with the clerk of the court, CB's failure to do so does not rise to the level of wilfulness typical of a § 37-3a award. CB asserts, which assertion is supported by attorney affidavits, that, pursuant to the advice of counsel, it believed that the court's order was not a directive to pay $144,311.61 and did not require CB to use its own funds to replenish the receivership account for the disallowed expense items. Instead, counsel advised CB that before it could be required to replenish the estate, further hearings were required. (CB's Memorandum, pp. 11-12.) See Hoyev. The DeWolfe Co., Inc., 61 Conn. App. 558, 564, 764 A.2d 1269 (2001) (compensatory interest not warranted where defendant was bolstered by advice of counsel that agreement was unenforceable).
For the foregoing reasons, KWLP's motion for contempt and claim for compensatory interest and costs is denied.
SKOLNICK, J.