IN RE SARAH ANN K.*
(AC 19371)

Spear, Vertefeuille and Stoughton, Js.

Argued October 26, 1999—officially released April 25, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Michael R. Hasse,* with whom, on the brief, was *Richard Hustad Miller,* for the appellant (respondent father).

*Carmel A. Motherway,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

STOUGHTON, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor daughter.[1] On appeal, the respondent claims that the court improperly (1) interpreted and applied General Statutes § 17a-112 (c) (3) (B), (2) found that he had failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (c) (3) (B) and (3) found that there was sufficient evidence to find that he had abandoned his minor child.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. On November 6, 1994, the child was born. Soon thereafter, the unmarried mother, after being interviewed by a department of children and families (department) caseworker, agreed with the caseworker that she was unable to care for the child and placed her in foster care. At that time, the respondent was incarcerated.

As a result of a petition brought by the commissioner of children and families (commissioner) on September

[1] The court also terminated the mother's parental rights; she, however, has not appealed. We refer in this opinion to the father as the respondent.

[2] We do not address the third claim because, as the respondent conceded at oral argument, the court never made a finding that the child had been abandoned.

21, 1995, the child was adjudicated neglected and uncared for, and committed to the custody of the commissioner. On February 13, 1996, the commissioner filed a petition to terminate both parents' parental rights. After a trial, the court on January 28, 1997, found that there was clear and convincing evidence to terminate the parental rights of the mother on the ground that she had failed to achieve sufficient personal rehabilitation, but made no determination as to the respondent. The court entered an adjudication but reserved disposition of the mother's case. The court also declined to terminate the respondent's parental rights because the department had not made reasonable efforts to help reunify him with his child. It then dismissed, without prejudice, the petition as to the respondent and continued the dispositional issues as to the mother. As preliminary expectations, the court ordered the respondent to pay $45 per week as nominal child support toward foster care maintenance payments and to maintain medical insurance for the child if it was available through his employment. Furthermore, the court directed the parties to establish specific expectations for the respondent within thirty days of the decision.

On June 26, 1998, the commissioner filed a second termination petition as to both parents, alleging abandonment and failure to achieve rehabilitation. On January 28, 1999, the court found by clear and convincing evidence that the child had previously been adjudicated neglected and uncared for and, citing General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), that the parents had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parents could assume responsible positions in the life of the child.[3] The court determined that terminating

---

[3] The court found that this ground had existed for more than one year and went on to make the dispositional findings required by General Statutes (Rev. to 1997) § 17a-112 (e).

the parental rights of both the mother and the respondent was in the best interest of the child. Subsequently, the respondent filed this appeal. Additional facts will be discussed where relevant to the issues in this case.

I

The respondent claims that the court interpreted and applied § 17a-112 (c) (3) (B), as amended by § 8 of Public Acts 1998, No. 98-241 (P.A. 98-241). Specifically, he claims that the court improperly terminated his parental rights because the evidence did not show that he had actually been provided with specific steps to take to facilitate the return of the child.[4] We disagree.

In 1998, the legislature amended § 17a-112 (c) (3) (B) in P.A. 98-241, § 8.[5] The amendment became effective on July 1, 1998. P.A. 98-241, § 18. The record in this case reveals that the commissioner filed the termination petition on June 26, 1998, before the amendment went into effect. Although the trial in this case was conducted on July 8, 1998, after the effective date of the amendment, the operative date for determining which statutory revision governs this case is June 26, 1998, the date the petition was filed. See *In re Migdalia M.*, 6 Conn.

---

[4] The respondent asserts that he never actually was provided with specific steps to take and that the court, therefore, lacked jurisdiction to entertain the petition.

[5] Public Acts 1998, No. 98-241, § 8 (amendments are shown by capital letters) provides in relevant part: "(c) The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, OR (2) IS FOUND TO BE NEGLECTED OR UNCARED FOR AND HAS BEEN IN THE CUSTODY OF THE COMMISSIONER FOR AT LEAST FIFTEEN MONTHS AND SUCH PARENT HAS BEEN PROVIDED SPECIFIC STEPS TO TAKE TO FACILITATE THE RETURN OF THE CHILD TO THE PARENT PURSUANT TO SECTION 46b-129, AS AMENDED BY THIS ACT, AND has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

App. 194, 200, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986); see also *In re Eden F.*, 250 Conn. 674, 687 n.6, 741 A.2d 873 (1999). Therefore, at the time the petition was filed, the statute in effect was General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B).

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that over an extended period of time, which . . . *shall not be less than one year* . . . [inter alia] (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."[6] (Emphasis added.) Specific steps the parent may take to facilitate the return of the child were required to have been provided to the respondent in the prior neglect proceeding pursuant to General Statutes (Rev. to 1997) § 46b-129 (b). See *In re Shyliesh H.*, 56 Conn. App. 167, 179, 743 A.2d 165 (1999). That statute, however, does not require that the parent again be provided specific steps to take to facilitate the return of the child before a termination petition may be granted.

On appeal, the respondent claims that he was not actually provided with the expectations that the court required the department to set within thirty days of the first termination proceeding. We disagree.

"Our analysis begins with the appropriate standard of review. We have long held that a finding of fact is

[6] Clearly, the trial court applied the 1997 revision of § 17a-112 (c) (3) (B) because it found that the ground for termination existed for more than one year, and the one year provision is not a requirement of the current revision of the statute.

reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 345–46, 736 A.2d 824 (1999).

On September 21, 1995, the court adjudicated the child neglected and uncared for. Thereafter, in the first termination proceeding, in January, 1997, the court determined that the respondent's parental rights should not be terminated because the department had not made reasonable efforts to reunify him with his child. To remedy the situation, the court set forth preliminary orders[7] and then directed the parties to establish specific expectations for the respondent within thirty days. The court found that the department drafted the proposed expectations within thirty days, yet on two separate occasions the respondent failed to appear in court to receive them.[8]

In light of the respondent's failure to attend two separate proceedings aimed at setting forth expectations, the court found that his claim that the court never provided him with specific steps was "rather disingenuous." Moreover, his claim is inaccurate. In March, 1997, a department social worker mailed a copy of the pro-

---

[7] The court ordered the respondent to make support payments and to provide medical insurance, if available, through his employment.

[8] On February 25, 1997, and on March 11, 1997, the department was prepared to present the respondent with specific expectations in an attempt to reunify him with his daughter; the respondent, however, failed to appear in court both times.

posed expectations to the respondent, and on November 13, 1997, he signed the copy.[9] Therefore, the trial court's factual findings that the department prepared expectations within thirty days and that the respondent signed them were not clearly erroneous.

## II

The respondent's second claim is that even if the court did provide him with specific steps to take to bring about reunification with the child, pursuant to § 17a-112 (c) (3) (B), it improperly found by clear and convincing evidence that he had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time he could assume a responsible position with respect to the care of his child. We disagree with the respondent's contention.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate [himself] in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every

[9] The expectations proposed by the department and signed by the respondent and his attorney were that he (1) keep all appointments set by or with the department and keep his whereabouts known to the department or his attorney, (2) visit the child as often as the department permits, (3) participate in parenting and individual counseling and drug and alcohol counseling as recommended, (4) secure and maintain adequate housing and income, (5) no substance abuse, (6) no involvement with the criminal justice system and (7) pay child support as ordered or modified by a court of competent jurisdiction and maintain medical insurance for the child's benefit if it is available through his employer.

reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 705–706. The function of this court on appeal is to determine whether the conclusions of the trial court were legally correct and factually supported. *In re Roshawn R.*, 51 Conn. App. 44, 51, 720 A.2d 1112 (1998).

In regard to the failure to achieve personal rehabilitation, General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B) provides for the termination of parental rights when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [he] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, supra, 250 Conn. 706. "This court recently explained that in assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, supra, 56 Conn. App. 180.

The inquiry for the trial court was whether the respondent achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." General Statutes (Rev. to 1997) § 17a-112 (c). This inquiry required the court to obtain a historical perspective of the respondent's child caring and parenting abilities. See *In re Galen F.*, 54 Conn. App. 590, 594, 737 A.2d 499 (1999).

There was little or no evidence to suggest that the respondent had ever played a constructive and useful role as a parent. The court found that the respondent had a long history of criminal activity dating back to 1977. He was arrested ten times between 1988 and 1997.[10] In June, 1994, the respondent was given a three year sentence for possession of narcotics and ultimately was released in August, 1996. He also was arrested in June, 1997, for assault, and again in July, 1997, for possession of narcotics and tampering with evidence. The July, 1997 arrest resulted in a one year sentence in May, 1998. This last arrest and sentence occurred after it had been suggested to the respondent that avoiding the criminal justice system might be a required expectation.

The court further found that during his incarceration and during the time he was not incarcerated, the respondent had few visits with his daughter. The respondent claimed that he had his daughter's best interests in mind by not allowing her to visit him in prison. His reason was that he did not want to expose her to the "trauma" of prison life. He, however, had no explanation for his lack of visits when he was out of prison. He was released from prison in August, 1996, and then was incarcerated

---

[10] His complete record shows charges that include assault, larceny and possession of controlled substances.

again in May, 1998. After the court's decision to dismiss the prior termination petition on January 28, 1997, the respondent visited his daughter only eight times, the last being in April, 1998, immediately before he was sent back to prison. The court found that he demonstrated no bond with the child. Furthermore, when they did see each other, he and the child had little interaction.

Moreover, the February 13, 1996 petition for termination resulted in the court's ordering the parties to set forth expectations for the respondent within thirty days. Testimony during the hearing on the second petition indicated that the department had made efforts to draft proposed expectations in a timely manner, but that on two occasions the respondent failed to appear in court to receive them. Following the respondent's failure to appear on March 21, 1997, and again on February 24, 1998, the trial court found, in two extension of commitment hearings, that continuing efforts to reunify the respondent with his child were not appropriate. In its memorandum of decision, the present termination court noted that the likely reasoning for finding continuing efforts to be inappropriate was the respondent's failure to appear at the hearings that were scheduled to develop a plan of expectations to assist in reunification of the respondent with his daughter. The termination court further stated in its memorandum of decision that the prior courts had found continuing efforts to be inappropriate because the respondent had failed to act with the devotion and dedication of a parent genuinely interested in reunification.

Testimony at the trial from Martha Barnes, an outpatient counselor, revealed that she evaluated the respondent on January 28, 1998. Although during her evaluation the respondent denied having any problem with alcohol or substance abuse, she concluded that he continued to have an alcohol problem that he was

unwilling to treat.[11] Furthermore, testimony at trial by Mary Dunion, a caseworker for the department, revealed that the respondent expressed to her at a January 26, 1999 meeting that he was not attending Alcoholics Anonymous meetings, Narcotics Anonymous meetings or individual counseling, as required under the court's expectations, because he claimed he did not need to do so. Dunion further testified that the child was fully attached to the foster family that she had been with since birth and that this family would adopt her if possible.

At the hearing on the June, 1998 termination petition, Richard Sadler, a psychiatrist, testified that in January and October, 1996, he evaluated the respondent and concluded that there was no hope that he would be able to develop an ability to minimally and adequately care for the child. In October, 1998, Sadler wrote that the child's best interest would be served by a termination of parental rights. As further evidence that the respondent had not achieved rehabilitation and lacks responsibility, Sadler stated that the respondent failed to appear for another evaluation in December, 1998.

We cannot say that the court was clearly erroneous in concluding that there was clear and convincing evidence that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time he could assume a responsible position in the life of his child.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] Barnes testified that the respondent had been drinking the night before the evaluation.