MEMORANDUM OF DECISION RE TERMINATION OF PARENTAL RIGHTS
This memorandum of decision addresses a petition to terminate the parental rights (TPR) of the respondent mother, Ivelisse M. (Ivelisse), and the respondent father, Juan C., Sr. (Juan Sr.), the biological parents of Yolanda M., (Yolanda), born 02/95. The petition, filed in Superior Court by the Department of Children and Families (DCF) on 6/24/02, alleged the grounds of abandonment and failure to rehabilitate as to both Ivelisse and Juan Sr., and lack of an ongoing parent-child relationship as to Juan Sr. On the date of the trial, the State, through its Assistant Attorney General (AAG), successfully motioned to amend the petition to add the ground of failure to rehabilitate with a previous termination as to Juan Sr.
On 12/21/00, DCF filed a Petition of Neglect and obtained an Order of Temporary Custody (OTC) regarding the above named child. The petition alleged that Yolanda was being denied proper care and attention, physically, educationally, emotionally or morally, that she was being permitted to live under conditions, circumstances or associations injurious to her well-being, and that she was abused and had a condition which was the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, deprivation of necessities, emotional maltreatment or cruel punishment.
More specifically, the petition alleged that;
Ivelisse was aware that Yolanda was sexually abused by her 11-year-old neighbor, who was the son of Yolanda's babysitter; CT Page 3575
Ivelisse failed to have her child medically evaluated after becoming aware of her daughter's vaginal bleeding;
Ivelisse failed to protect her daughter from an inappropriate babysitter and the babysitter's 11-year-old son;
Yolanda's father was whereabouts unknown and he was not listed on the child's birth certificate.
The OTC was sustained on 12/27/00 (Dewey, J.). On 2/7/01, Ivelisse appeared in court (Dewey, J.) and denied the allegations in the petition, while Juan Sr. was defaulted on the neglect petition. On 7/17/01, Yolanda was adjudicated neglected and was committed to the care and custody of DCF for not more than 12 months.[2] On, 3/27/02, the court (Reynolds, J.) granted an extension of commitment until further order of the court and approved the permanency plan, which called for TPR and adoption.
On 7/24/02, Juan Sr. appeared to answer to the TPR petition and entered a denial, while Ivelisse was defaulted on that date. Juan Sr. requested pictures of Yolanda in court, but withdrew the request. He also requested, through counsel, a paternity test, which the court granted.
On 1/21/03, a joint trial was held on the State's Motion to Maintain Commitment, Motion to View Permanency Plan and TPR. Prior to the commencement of evidence, the State motioned orally to amend the TPR petition and add the ground of failure to rehabilitate with a previous termination, which the court granted. After the trial, this court granted the motions to maintain commitment and to view the permanency plan. This court approved the permanency plan and found that further reunification efforts as to both parents were not appropriate.
This court has jurisdiction over the pending matters. Notice has been provided in accordance with the applicable provisions of the Practice Book. This court has no reason to believe that there is any action pending in any other court affecting custody of the child at issue.
 I. FACTUAL FINDINGS
The court has reviewed the original petition, the TPR social study, and the exhibits submitted in evidence. The court has utilized the applicable legal standards[3] in considering this evidence and the testimony of the witness. Upon deliberation, the court finds that the following facts were proven by clear and convincing evidence at trial, unless otherwise specified. CT Page 3576
 PARENTAL BACKGROUND
Ivelisse was born on 12/30/77 in Bayamon, Puerto Rico. She reported that her mother cared for her until she was six months old, then she was placed with her aunt. She indicated that her mother could no longer care for her due to her having "worms in her stomach." She indicated that she never had a relationship with her father. Ivelisse has two sisters by her mother and one brother by her father. She does not have a relationship with her siblings.
Ivelisse reported that, as a child, she moved frequently. She moved to New York when she was two or three years old. At age nine, she moved to Waterbury, but subsequently returned to Puerto Rico to live with her mother. Ivelisse indicated she was physically and emotionally abused by her mother and sexually assaulted by her mother's boyfriend during this time. She stated her mother never believed her and that Child Protection Services did not intervene.
At age 11, she moved to Providence, Rhode Island with her aunt. They resided in Providence for one year and then returned to Waterbury. Ivelisse received her elementary education in New York and Puerto Rico. She attended Kennedy High School in Waterbury and completed the tenth grade. Ivelisse indicated she enjoyed school, but was bullied by her classmates. Reportedly she stopped attending school because of family problems. She attempted to reconcile with her mother, who had also moved to Waterbury. Apparently, due to the reconciliation having been so unsuccessful and so emotionally draining, Ivelisse claimed that she could no longer attend school.
Ivelisse has never been married. She has limited work experience. She worked in different factories from 1997-99. As of March 2002, Ivelisse was unemployed and living in New Britain with her boyfriend.
Ivelisse reported to be in good health, with the exception of a heart murmur. She is not aware of any significant physical or mental health problems.
Ivelisse reported she and Yolanda had a good relationship and were very close. She indicated that she never had any involvement with DCF prior to the incident in December 2000 which she felt was "an injustice."
On 3/18/02, Ivelisse telephoned DCF. She indicated that she lived in New Britain with her boyfriend. She indicated that she had not visited with her daughter or contacted DCF since May 2001 because she wanted to establish herself and obtain an apartment. Ivelisse stated she was CT Page 3577 unemployed and received food stamps.
According to Ivelisse, Juan Sr. was born on 9/3/74. He has not been involved in Yolanda's life. According to Ivelisse, Juan Sr. has only seen Yolanda once. On 5/20/02, the social worker in this case learned, by accident, that Juan Sr. has been incarcerated since 11/15/99 at Radgowski Correctional Institute for Sexual Assault in the First Degree and that he had other children that had been under the supervision of DCF. On 8/17/00, Juan was convicted of Sexual Assault in the First Degree and was sentenced to a jail term of 10 years, execution suspended after the service of 5 years, to be followed by 10 years of probation. He is scheduled to be released no later than 11/12/04. He also has outstanding warrants in another state. His criminal record, which was admitted as an exhibit, also shows convictions for Interfering With A Police Officer, Assault in the Third Degree (2 counts), Failure to Appear in the Second Degree (7 counts), Operating Under Suspension, Criminal Mischief in the Third Degree, Larceny in the Sixth Degree, Criminal Trespass in the Second Degree, Burglary in the Third Degree and Violation of Probation.
CHILD'S BACKGROUND
Yolanda was born in 02/95 to Ivelisse and Juan Sr. in Waterbury. Ivelisse indicated that Yolanda was born "yellow" and she had to remain in an incubator. Yolanda was placed in foster care in December 2000 after being sexually abused by her babysitter's 11-year-old son. Yolanda has experienced multiple placements. She was placed in a DCF safe home from 12/19/00-1/31/01. Upon discharge from the Safe home, Yolanda was placed with a maternal cousin. She resided with her cousin from 1/31/01 to 6/11/01. The cousin had marital problems and she subsequently moved out of state to attend college. Yolanda was then placed in a DCF licensed foster home from 6/11/01 to 10/11/01. Yolanda disrupted that placement and was placed in another foster home from 10/11/01 to 2/1/02. On 2/1/02, Yolanda was placed in her fourth foster home. That foster mother requested Yolanda's removal, indicating that she could not manage Yolanda's behaviors. Reportedly, Yolanda has poor impulse control, she is aggressive, she steals, hoards food, and she has difficulty following directions. Yolanda receives respite services on Saturdays. She also receives medication therapy, Ritalin 5 mg, which was prescribed by her pediatrician. She is also scheduled to resume individual therapy with Dr. Phillips.
Social worker Hernandez testified that Yolanda was placed in her present home in 06/02, and has been doing well there.
Yolanda is currently eight years old and was in kindergarten at CT Page 3578 the time of the writing of the social study. She received special education services. Although Yolanda has made academic progress, she is still delayed significantly. She was to be promoted to the first grade in the fall of 2002.
CHILD'S SIBLINGS
Juan Sr. had other two children, Juan C, Jr. (Juan Jr.) and John C. (John). At the time of the writing of the social study, they were residing with their paternal grandmother.
 II. ADJUDICATION
In the adjudicatory phase of these proceedings,[4] the court has considered the evidence related to circumstances and events occurring through the date of the trial, in view of the fact that the court allowed the State to amend the TPR petition.[5] With regard to the allegations of failure to rehabilitate, the court has considered the evidence and testimony related to circumstances occurring through the close of trial.[6] Upon review, as discussed below, the court has determined that statutory grounds for termination exist as to both Ivelisse and Juan Sr.
II.A. LOCATION AND REUNIFICATION EFFORTS
The court finds that the petitioner has met its burden of proving, by clear and convincing evidence, that reasonable efforts were made to locate and reunify Ivelisse and Juan Sr. with their child.[7] Based on the clear and convincing evidence produced at trial, the court finds that, under the circumstances of this case, both Ivelisse and Juan Sr. are either unable or unwilling to benefit from reasonable reunification efforts as contemplated by CGS § 17a-112 (j) (1).[8]
Multiple services have been provided to Ivelisse in an effort to reunify her in parenting role with the child at issue in this case. Over the years, DCF has provided casework services, transportation, and referred her to substance abuse evaluation at Morris Foundation, sexual abuse counseling at Sexual Assault Crisis Services, and parenting classes at Family Ties. On 6/20/01, Family Ties closed her case because she had not attended classes. Ivelisse attended Sexual Assault Crisis Services (SACS) five times since 1/10/01, but did not complete counseling there.
Unfortunately, after over two years of Yolanda being in DCF's care, Ivelisse continues to demonstrate her inability to appropriately care for Yolanda as she has failed to complete her specific steps and has failed CT Page 3579 to visit Yolanda.
Specifically, Ivelisse has failed to rehabilitate herself, despite DCF's best attempts to assist her, in that she has failed to keep her whereabouts known to DCF, has not contacted DCF since 06/01. She has not made any efforts to pursue counseling. She did not complete counseling at Sexual Assault Crisis Services nor did she complete parenting education at Family Ties. She has not attended three of three Administrative Case Reviews. Accordingly, the court concludes that Ivelisse is fundamentally either unable or unwilling to reap any meaningful, lasting benefit from reunification efforts.
Juan Sr. has spent much of his daughter's life in the custody of DOC, or on probation, or as a fugitive from the forces of justice. He was never issued specific steps in this case because he was both unknown and whereabouts unknown to DCF until 05/02. DCF social worker Hernandez (Hernandez) testified that he was not discovered through the normal channels of inquiry, such as searches of Department of Social Services (DSS) records, telephone directories and DOC records. She indicated that this was due to erroneous information that had been supplied by Ivelisse. Juan was discovered as a result of social workers discussing cases and clients and finding out that the fathers of their various clients were actually the same person.
It is interesting to note that Juan testified that he was in this court and was involved with DCF concerning his sons in the past, and was even represented by the same lead counsel as now. His paternal rights to his sons were terminated on 6/6/02; but the docket numbers on the termination orders indicate that the underlying neglect/uncared for actions were filed in the calendar year 2000. It would be reasonable to conclude that he was either in contact with DCF or he knew how to get in touch with DCF in order to safeguard his daughter's interests. Indeed, Juan Sr. testified that he had been in contact with DCF social workers concerning his sons. This court finds that he could have easily made inquiry with DCF about his daughter and finds that DCF made all reasonable attempts to find Juan Sr.
Reunification services would have been inappropriate and unnecessary for Juan Sr. as he has not demonstrated much interest in Yolanda, and has made virtually no effort to engage in rehabilitation. In view of this lack of interest and cooperation, the court concludes that Juan Sr. is unwilling or unable to benefit from any such services.
II.B. STATUTORY GROUNDS FOR TERMINATION AS TO IVELISSE CT Page 3580
II.B.1. ABANDONMENT — § 17a-112 (j) (3) (A)
The petitioner first alleges that Ivelisse abandoned her daughter Yolanda, within the meaning of § 17a-112 (j) (3) (A).[9] In the absence of evidence to the contrary, applying the requisite legal standards[10] and construing the statute in compliance with the mandate of § 17a-112 (p), the court finds this matter in favor of the petitioner.
The clear and convincing evidence related to Ivelisse's conduct reveals that from 7/17/01 through 6/24/02, and continuing through the time of trial, this respondent failed "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . ."In re Deana E., supra, 61 Conn. App. 193. She has not seen Yolanda since 5/23/01. Since Yolanda was placed in foster care in December 2000, Ivelisse has visited with her on only eight occasions and has not visited her daughter since May 23, 2001. Ivelisse did not contact the petitioner to show concern for the child or to ask to see the child from May 24, 2001 to March 18, 2002. She was last in touch with DCF in 06/02. She has never sent Yolanda any cards, letter, or gifts. She has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Yolanda.
When the adjudicatory date of 7/17/01 is applied, the evidence in this matter clearly and convincingly establishes that Ivelisse has failed the test of meeting "[t]he commonly understood obligations of parenthood" identified by In re Deana F., supra, 61 Conn. App. 193. Accordingly, based on clear and convincing evidence presented in this case, the court finds that the petitioner has met its burden of proving that Ivelisse has abandoned Yolanda, within the meaning of § 17a-112 (j) (3) (A).
II.B.2. FAILURE TO REHABILITATE — § 17a-112 (j) (3) (B) (i)
The petitioner further alleges that Ivelisse's parental rights should be terminated because she has failed to achieve rehabilitation within the meaning of § 17a-112 (j) (3) (B).[11] As Yolanda has been adjudicated neglected, the critical issue for this court is whether this respondent has achieved rehabilitation sufficient to render her able to care for Yolanda. Applying the requisite legal standards[12] and construing the statute in compliance with the mandate of § 17a-112 (p),[13] the court finds this issue in favor of the petitioner.
Several aspects of the clear and convincing evidence in this case compel the conclusion Ivelisse has yet to achieve a sufficient "level of rehabilitation . . . which would reasonably encourage a belief that at CT Page 3581 some future date she can assume a responsible position in her [child's life]." In re Sarah Ann K., supra, 57 Conn. App. 448. See In re DanielC., 63 Conn. App. 339, 354, 776 A.2d 487 (2001); In re Ashley S., supra,61 Conn. App. 665. First, the credible evidence in this case, presented through the DCF social study and the testimony of the witnesses, clearly and convincingly establishes that Ivelisse has not achieved § 17a-112
(j) (3) (B) rehabilitation. The court credits the DCF reports which showed that Ivelisse has done virtually nothing towards achieving her rehabilitation.
On 2/11/99 and on 9/9/99, the court issued specific steps for Ivelisse. Since then, her compliance with the steps has been as follows:
Keep all appointments set by or with DCF: Prior to March 2002, Ivelisse had not contacted this Department since 5/23/01. She was whereabouts unknown. She has not made efforts to pursue counseling. She did not complete counseling at Sexual Assault Crisis Services nor did she complete parenting education at Family Ties. She has not attended three of three Administrative Case Reviews.
Visit the child as often as DCF permits: Ivelisse has had eight visits with Yolanda since she has been in foster care. Ivelisse has not visited her daughter since 5/23/01.
Participate in parenting counseling: Ivelisse has not complied. On 6/20/01, Waterbury Youth Services closed her case due to her lack of participation. Ivelisse failed to complete services offered to her at Sexual Assault Crisis Center. She only attended five sessions from 1/10/01 to 2/13/01.
Secure and maintain adequate housing and income: On 5/23/01, Ivelisse informed DCF she was being evicted and she had no place to live. She was whereabouts unknown from 5/24/01-3/18/02. On 3/18/02, Ivelisse informed DCF that she resided in New Britain with her boyfriend, was unemployed and received food stamps.
No substance abuse: On 6/1/01, Ivelisse's urinalysis results were received from Morris Foundation, indicating that she was free from all illegal and controlled substances.
No involvement with the criminal justice system: According to a state police check, Ivelisse has not been arrested since January 2001.
For two years, despite the services offered, Ivelisse has failed to demonstrate that within a reasonable time, considering Yolanda's age and CT Page 3582 needs, she could assume a responsible position in her life. The clear and convincing evidence reveals that from 7/17/01 and continuing through the time of trial, Ivelisse failed to participate in or complete any counseling regimen, and remains without the qualities necessary to successfully parent Yolanda. Effectively, she is no better able "to resume the responsibilities of parenting at the time of filing the termination petition than [she] had been at the time of [Yolanda's] commitment." In re Hector L., supra, 53 Conn. App. 367. Given the age, sensibilities, needs and satisfactory current placement of the child involved, and given Ivelisse's failure to attempt to benefit from services and continued problems, it would be unreasonable to conclude that she will be able to achieve rehabilitation from her poor parenting skills and other parenting deficits, so as to be able to serve as a safe, responsible parent within a reasonable time. This is even more important considering this respondent mother's failure to protect Yolanda from sexual predators, seek treatment for the child once she knew of the sexual assaults and the child's extremely difficult behaviors. Accordingly, based on the clear and convincing evidence presented in this case, the court finds that the petitioner has proved that Ivelisse has failed to achieve rehabilitation pursuant to § 17a-112 (j) (3) (B).
II.C. STATUTORY GROUNDS FOR TERMINATION AS TO JUAN SR.
In this case, the clear and convincing evidence establishes that Juan Sr. was not a part of this case until 5/20/02, when DCF inadvertently discovered that he might be Yolanda's father and that he was in jail. He was brought into court on the TPR plea date, 7/24/02, and requested a paternity test, which subsequently proved that he was the father of Yolanda. Social worker Hernandez testified that Ivelisse proved erroneous information concerning the spelling of Juan Sr.'s name, and that, prior to 05/02, DCF had sought him through publication, Department of Social Services (DSS) records, DOC records and the telephone directory.
II.C.1. ABANDONMENT — § 17a-112 (j) (3) (A)
The petitioner first alleges that Juan Sr. abandoned his daughter Yolanda, within the meaning of § 17a-112 (j) (3) (A).[14] In the absence of evidence to the contrary, applying the requisite legal standards[15] and construing the statute in compliance with the mandate of § 17a-112 (p), the court finds this matter in favor of the petitioner.
The clear and convincing evidence related to Juan Sr.'s conduct reveals that from 7/17/01 through 6/24/02, and continuing through the time of trial, this respondent failed "to maintain a reasonable degree of CT Page 3583 interest, concern or responsibility as to the welfare of the child . . ."In re Deana E., supra, 61 Conn. App. 193. He has not seen Yolanda since she was placed in foster care in 12/00. Juan Sr. has never sent any cards, gifts, letters or other communications to his daughter, nor has he contacted DCF to show concern for her or to ask for visits.
More importantly, the clear and convincing evidence shows that Juan Sr., who was been incarcerated since 11/99, did not contact DCF to attempt to learn his daughter's fate or to ask DCF to check on his daughter's well-being. During this period, Juan Sr. was in contact with DCF concerning his sons, Juan Jr. and John. It would have been simple for him to have had DCF make an inquiry as to the whereabouts and condition of Yolanda, but he clearly failed to do so.
During the course of the hearing, Juan Sr. and his aunt, Magdelana, testified as to their claims of having had contact and custody and having cared for Yolanda during various periods in the 1990s. Juan Sr. testified that when Yolanda was born, he was in Puerto Rico and didn't find out until 3/96. He also testified that Ivelisse always denied that he was Yolanda's father and that he didn't know that she was his daughter. Juan Sr. testified that he stayed in the same home with her for one and one half weeks in 1996, and that he felt that she was his daughter. He indicated that he purchased her some clothing and returned to Puerto Rico.
Juan Sr. claimed that he next saw Yolanda in 06/97, while staying in the same house that she lived in. He was there for seven months, and saw her constantly. He claimed to have seen the resemblance to him and believed that she was his daughter.
Juan Sr. indicated that the next time that he saw Yolanda was in 04/99, when he found her sleeping in the driveway of a club. He took custody of her and kept her for 5-6 months, until he went to jail. After he went to jail, his ex-wife returned Yolanda to Ivelisse.
Magdelana V., (Magdelana), Juan Sr.'s aunt, testified that Juan Sr. had custody of "the little girl," for 6-7 months in 1999, and that she had cared for her when she was small. She indicated that she was able to care for Yolanda until Juan Sr. got out of jail.
Social worker Hernandez testified that Ivelisse first indicated that Juan Sr. had never seen Yolanda, then Ivelisse changed her story to indicate that he only saw Yolanda once.
The court finds the version of events as put forth by Juan Sr. and CT Page 3584 Magdelana to be less than credible. Juan Sr. is a twice-convicted felon. His criminal record, which was admitted as an exhibit, shows that he spent much of 1994 through 1999 as a fugitive from justice on various failure-to-appear charges. Furthermore, the court found it curious that Magdelana, who claimed to have cared for Yolanda when she was young, referred to her in her testimony as "the little girl," not as Yolanda. It was also clear that Magdelana would be a "straw man" for Juan Sr., and would return Yolanda to him once he was released from jail, regardless of his fitness to parent Yolanda.
Juan Sr. has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
When the adjudicatory date of 7/17/01 is applied, the evidence in this matter clearly and convincingly establishes that Juan Sr. has failed the test of meeting "[t]he commonly understood obligations of parenthood" identified by In re Deana F., supra, 61 Conn. App. 193. Accordingly, based on clear and convincing evidence presented in this case, the court finds that the petitioner has met its burden of proving that Juan Sr. has abandoned Yolanda, within the meaning of § 17a-112 (j) (3) (A).
II.C.2. FAILURE TO REHABILITATE — § 17a-112 (j) (3) (B) (i)
The petitioner further alleges that Juan Sr.'s parental rights should be terminated because he has failed to achieve rehabilitation within the meaning of § 17a-112 (j) (3) (B).[16] As Yolanda has been adjudicated neglected, the critical issue for this court is whether this respondent has achieved rehabilitation sufficient to render him able to care for Yolanda. Applying the requisite legal standards[17] and construing the statute in compliance with the mandate of § 17a-112 (p),[18] the court finds this issue in favor of the petitioner.
In deciding the failure to rehabilitate issues, the court has remained aware that the evidence in this case does not reflect that specific steps were ever imposed upon Juan Sr. Where, as here, one of the grounds for the TPR petition is based upon § 17a-112 (j) (3) (B) (i), however, our courts have determined that the use of specific steps is not requisite to assessment of the degree to which a parent has, or has not, achieved rehabilitation in the context of a child protection case. The Appellate Court has repeatedly confirmed that, "[i]n determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department. See In reMichael M., 29 Conn. App. 112, 125, 614 A.2d 832 (1992); see also In reCT Page 3585Migdalia M., [supra, 6 Conn. App. 206]." (Emphasis added.) In re VincentD., 65 Conn. App. 658, 670, 783 A.2d 534 (2001).
Several aspects of the clear and convincing evidence in this case compel the conclusion Juan Sr. has yet to achieve a sufficient "level of rehabilitation . . . which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his child's life]." In re Sarah Ann K., supra, 57 Conn. App. 448. See In re DanielC., 63 Conn. App. 339, 354, 776 A.2d 487 A.2d (2001); In re Ashley S.,supra, 61 Conn. App. 665. First, the credible evidence in this case, presented through the DCF social study, clearly and convincingly establishes that Juan Sr. has not achieved § 17a-112 (j) (3) (B) rehabilitation. The court credits the DCF reports and the testimony which showed that Juan Sr. has done nothing towards achieving his rehabilitation.
The credible evidence establishes that Juan spent most of the 1990s either in jail, on probation or in flight from law enforcement. During that decade, he amassed convictions for Burglary in the Third Degree, Violation of Probation, Criminal Trespass in the Second Degree, Larceny in the Sixth Degree, Failure to Appear in the Second Degree (7 counts), Assault in the Third Degree (2 counts), Criminal Mischief in the Third Degree, Operating Under Suspension, Interfering With A Police Officer and Sexual Assault in the First Degree, for which he is presently serving a term of incarceration.
This court concludes that Juan Sr. has not corrected the factors that led to the initial commitment of Yolanda, as far as he is concerned. The clear and convincing evidence reveals that from 7/17/01 and continuing through the time of trial, Juan Sr. has not been available to take part in this child's life, and, based on his propensity to commit criminal acts, he will never be consistently available for this child. He is far too occupied with committing crimes and serving time for these lawless acts. When one also considers the high level of care, patience and discipline that Yolanda's special needs will require from her caregiver, it is patently clear that Juan Sr. is not in a better position to parent her than he was at the time of the neglect adjudication and remains without the qualities necessary to successfully parent Yolanda. Effectively, he was no better able "to resume the responsibilities of parenting at the time of filing the termination petition than [he] had been at the time of [Yolanda's] commitment." In re Hector L., supra,53 Conn. App. 367. Given the age, sensibilities, needs and special needs of the child involved, and given Juan Sr.'s failure to correct his deviancies, it would be unreasonable to conclude that he will be able to achieve rehabilitation from his wanton reign of criminal behavior and CT Page 3586 parenting deficits, so as to be able to serve as a safe, responsible parent within a reasonable time. Accordingly, based on the clear and convincing evidence presented in this case, the court finds that the petitioner has proved that Juan Sr. has failed to achieve rehabilitation pursuant to § 17a-112 (j) (3) (B).
II.C.3. LACK OF ONGOING PARENT-CHILD RELATIONSHIP § 17a-112
(j) (3) (D)
The petitioner next alleges that no ongoing parent-child relationship exists between Juan Sr. and Yolanda, and that the child's best interests will not be served by allowing additional time for this relationship to be developed, so that the TPR petition should be granted pursuant to CGS § 17a-112 (1) (3) (D).[19] Applying the requisite legal standards, and construing the statute in compliance with the mandate of § 17a-112
(p), the court finds this matter in favor of the petitioner.
The relevant legal algorithm first requires the court to determine whether a parent-child relationship exists between Juan Sr. and his child.[20] In re Jonathon G., supra, 63 Conn. App. 525. In doing so, the court adopts the abandonment findings set forth in Part II.C.1., which; indicate that Juan Sr. has never functioned in a parental role for this child. In discerning the existence of a parent-child relationship, the court must also determine whether the child maintains any present feelings for Juan Sr. and, if so, whether those feelings are of a positive nature. In re Jonathon G., supra, 63 Conn. App. 525. The clear and convincing evidence establishes that Yolanda does not mention or express any feelings about Juan Sr., and that she has no feelings for Juan Sr. that are of a positive nature. The social study indicates that Yolanda has not seen her father since birth. She never asks for or talks about her father and has no present/positive memories of her father. Social worker Hernandez testified that, in 10/02, she attempted to raise the subject of Juan Sr., her biological father, with Yolanda. Hernandez indicated that Yolanda didn't know his name and may have slept at his house once.
From this, it is apparent that no parent-child relationship exists between Juan Sr. and Yolanda.[21] Furthermore, it would be detrimental to the child's best interests to allow additional time for a parenting relationship to be developed with Juan Sr. Juan Sr. has never demonstrated an interest in Yolanda prior to these proceedings. Yolanda is in need of permanency. In re Jonathon G., supra, 63 Conn. App. 525.
As the clear and convincing evidence in this case establishes that no ongoing parent-child relationship exists between Juan Sr. and the child, CT Page 3587 and that it is not in the best interests of the child to allow more time for this respondent to develop a relationship with his biological child, the petitioner has met its burden of proof under § 17a-112
(j) (3) (D). In re Jonathon G., supra, 63 Conn. App. 525; In re Juan Sr.C., supra, 56 Conn. App. 22.
II.C.4. FAILURE TO REHABILITATE BY A PARENT WITH A PREVIOUS TERMINATION OF PARENTAL RIGHTS — § 17a-112 (j) (3) (E)
On the date of the TPR trial, 1/21/03, the State, through its AAG, orally motioned to amend the petition prior to trial in order to add the ground of failure to rehabilitate by a parent. This court granted the motion.
This court finds that the State failed to prove this ground by clear and convincing evidence. Although the State clearly and convincing showed that Juan Sr. has failed to rehabilitate himself within the statutory meaning, their own evidence, specifically the DCF social study, and the TPR petition, which was filed on 6/24/02, both indicate that Yolanda's date of birth is 02/95. She would have been seven years old on 02/02, thus placing her beyond the scope of CGS § 17a-112 (j) (3) (E).[22]
 III. DISPOSITION
As the court has concluded that statutory grounds for termination exist, it next "must determine whether termination is in the best interests of the child." (Citation and quotation marks omitted.) In reQuanitra M., supra, 60 Conn. App. 103. In this dispositional phase, the court has considered the evidence and testimony related to circumstances and events through the close of evidence. Practice Book 33-5.
III.A. SEVEN STATUTORY FINDINGS
The court has made each of the seven written factual findings required by CGS § 17a-112 (k) based upon the clear and convincing evidence presented at trial, and has considered the evidence relevant to each of these findings in deciding whether to terminate parental rights.[23]
See In re Jonathon C., supra, 63 Conn. App. 528.
III.A.1. TIMELINESS, NATURE AND EXTENT OF SERVICES — § 17a-112
(k) (1)
As set forth in Parts I. and II., DCF provided multiple, timely and appropriate services for Ivelisse. Those services included casework services, transportation and visitation. DCF also referred her for CT Page 3588 parenting classes, substance abuse evaluation and sexual abuse counseling.
Furthermore, the court has found in Part II.A. that this respondent mother is unwilling or unable to achieve timely benefit from the extension of additional reunification efforts.
No services were offered to Juan Sr., due to his contesting paternity, his incarceration and his failure to make himself known to DCF.
Furthermore, the court has found in Part II.A. based on the clear and convincing evidence produced at trial, under the circumstances of this case, both Ivelisse and Juan Sr. are either unable or unwilling to benefit from reasonable reunification efforts as contemplated by CGS § 17a-112 (j) (1).[24]
III.A.2. REUNIFICATION EFFORTS PURSUANT TO FEDERAL LAW § 17a-112
(k) (2)
Through the services provided to Ivelisse and Juan Sr. as described in Parts I. and II., DCF made reasonable efforts to reunite the child with both respondent parents, pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980, as amended.
This court made a finding that further efforts toward reunification were no longer appropriate as to both respondent parents on 1/21/03.
III.A.3. COMPLIANCE WITH COURT ORDERS — § 17a-112 (k) (3)
The clear and convincing evidence elicited by the State indicated the following.
In reference to her court ordered expectations, Ivelisse has:
not abused substances;
not had any involvement with the criminal justice system.
In reference to her court ordered expectations, Ivelisse has not:
kept her whereabouts known to DCF;
visited the child as often as DCF permitted;
completed parenting classes; CT Page 3589
secured and maintained adequate housing.
In addition to the information contained in the social study, social worker Hernandez testified that Ivelisse last visited Yolanda on 5/23/01, that she went whereabouts unknown during periods of time in the pendency of this case, and has not contacted DCF since 06/02.
As previously noted, Juan Sr. did not sign specific steps, due to DCF's inability to find him until 05/02, despite having made reasonable efforts to find him. Juan Sr. made no effort to contact DCF concerning this child, despite, according to his own testimony, being in touch with DCF on other matters and having reason to believe that Ivelisse was not an appropriate caretaker. Once he was found, DCF did not offer him services initially because he contested paternity, his incarceration and the fact that the TPR had already been filed.
III.A.4. THE CHILD'S FEELINGS AND EMOTIONAL TIES — § 17a-112
(k) (4)
Yolanda is 8 years old and has spent over two years in foster care. She has had sporadic visits with her mother and no visits with her father. Yolanda does not talk about her parents. Yolanda has experienced multiple placements. She has resided in her current foster home since 06/02.
There is no evidence of any positive emotional ties to Juan Sr.
III.A.5. AGE OF THE CHILD — § 17a-112 (k) (5)
Yolanda is 8 years old and has spent over two years in foster care. She is extremely dependent upon a responsible and nurturing caregiver. Given her age and her parents' inconsistent or nonexistent levels of care and emotional availability, it would be unfair to subject her to further uncertainty about her future.
III.A.6. PARENTS' EFFORTS TO ADJUST THEIR CIRCUMSTANCES § 17a-112
(k) (6)
Since Yolanda was placed in foster care in December 2000, Ivelisse has visited with her on eight occasions. She has not visited her daughter since May 2001. Ivelisse has never sent Yolanda any cards, letters, or gifts. She has not completed the recommended parenting classes and sexual assault crisis services. Ivelisse has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Yolanda. CT Page 3590
Juan Sr. has not contacted DCF since Yolanda was placed in foster care in December 2000. He has never provided physical care or financial support for the child. He has never contacted DCF to show concern for the child or ask to see the child. He has never sent the child any cards, gifts or letters. He has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. On 5/20/02, DCF learned that Juan Sr. had been incarcerated since 11/15/99 for Sexual Assault in the First Degree. He is scheduled to be released no later than 11/12/04. He also has a detainer which may require him to face charges in another state.
Ivelisse has been involved with DCF for more than two years. At this time, she has completed no services nor has she followed the recommendation of DCF or service providers. Ivelisse has not demonstrated a reasonable amount of concern for Yolanda or her well being. She has already exhausted a reasonable period of time to rehabilitate.
The credible evidence indicates that Juan Sr. has shown no interest in the well-being of Yolanda. He has made no efforts to show concern for her well-being. Furthermore, Juan Sr. has continued a decade long pattern of serious and felonious criminal conduct, culminating in his 1999 conviction for Sexual Assault in the First Degree.
Giving either Ivelisse or Juan Sr. additional time, considering Yolanda's age and needs, would not likely bring their parenting performance within acceptable standards sufficient to make reunification in Yolanda's best interests.
III.A.7. EXTENT TO WHICH PARENTS WERE PREVENTED FROM MAINTAINING RELATIONSHIPS WITH THE CHILD — § 17a-112 (k) (7)
No unreasonable conduct by the child protection agency, foster parents or third parties prevented either Ivelisse or Juan Sr. from maintaining relationships with the child at issue in this case. Although the limitations inherent in the foster care system were in effect, neither Ivelisse's nor Juan Sr.'s economic circumstances prevented the maintenance of such relationships.
III.B. BEST INTERESTS OF THE CHILD — § 17a-112 (j) (2)
The court is next called upon to determine whether terminating the parental rights of Ivelisse and Juan Sr. would be in Yolanda's best interests.[25] Applying the appropriate legal standards[26] to the facts which are clearly and convincingly apparent in this case, the court CT Page 3591 finds this issue in favor of the petitioner.
In determining whether termination of the respondents' parental rights would be in the child's best interests, the court has examined the relevant factors, which include their opportunities for sustained growth, development, well-being, stability and continuity of their environment; their length of stay in foster care; the nature of their relationship with the foster parents and biological parents; and the degree of contact maintained with their biological parents.[27] In reAlexander C., 60 Conn. App. 555, 559 (2000); In re Shyina B.,58 Conn. App. 159, 167 (2000); In re Savanna M., supra, 55 Conn. App. 816. In a matter such as this, the court is further called upon to balance the child's intrinsic need for stability and permanency against the benefits of maintaining a connection with his biological parents. See Pamela B.v. Ment, 244 Conn. 296, 314, 709 A.2d 1089 (1998) (child's physical and emotional well-being must be weighed against the interest in preserving family integrity). Under such scrutiny, the clear and convincing evidence establishes that, in this matter, it is not in Yolanda's best interests to continue to maintain any legal relationship with either parent.
Ivelisse has failed to show adequate care and concern for the well-being of Yolanda. The clear and convincing evidence clearly show that she failed to look out for this child's well-being by not preventing Yolanda from being sexually abused by an 11 year old son of her babysitter. She then allowed this person to continue to babysit for Yolanda, further exposing her to the depredations of the 11 year old. Ivelisse then compounded her derelictions by failing to have Yolanda medically evaluated as a result of vagina bleeding.
Ivelisse was ordered to engage in certain rehabilitative steps by the court. She failed to comply with those specific steps, despite having been giving time and resources to help complete them. She has failed to visit Yolanda or show much interest in her.
Juan Sr. has failed to show any interest in Yolanda until recently. He has played no part in her life, nor has he supported her or provided any assistance, financial, emotional or spiritual, to her. A repeat offender and convicted felon and sex criminal, Juan Sr. will be incarcerated until 2004, and he may have to answer to charges in another state. His plan for the care of this child, based upon his testimony and that of his aunt, is unrealistic and is not in the best interest of this child. Further, there has been no showing that Juan Sr. has done anything to address the problems which caused him to spend most of the last decade in jail, or on probation, or as a fugitive. The concept of sending this troubled and problematic child, already a victim of sexual abuse, to the custody of a CT Page 3592 convicted sex criminal who has not evidenced any showing of treatment is clearly and convincingly not in Yolanda's best interest.
DCF social worker supervisor Deborah Daniello (Daniello), who was stipulated to being an expert in social work, testified on rebuttal that Juan Sr.'s plan was not in Yolanda's best interest. She expressed concern at the prospect of Juan Sr. obtaining custody of this child, due to his conviction for Sexual Assault in the First Degree. Daniello also testified that, in 07/02, she covered a court appearance at Juvenile Court for social worker Hernandez. While there, she gave Juan Sr. her telephone number and that of Hernandez, and encouraged him to contact either one of them concerning Yolanda. According to Daniello, he failed to do so.
Overall, in this case, "[a] parent's love and biological connection . . . is simply not enough" to serve as the basis for continuing the legal relationship between the respondent parents and their child. In re AshleyS., supra, 61 Conn. App. 667.
Yolanda has a healthy bond with her foster family. The foster parents provide for her needs. She is apparently happy there and well cared for. The foster parents have also responded to Yolanda's various inappropriate behaviors and educational problems through the school system and through therapy. As a result of the foster parents' work, her behavior has improved. Social worker Hernandez testified that the foster parents are Yolanda's psychological parents. According to the credible testimony, the foster parents are seriously considering adoption. Yolanda wishes to make this home a permanent one.
Social worker Hernandez testified that the DCF permanency plan called for Ivelisse and Juan Sr.'s paternal rights to be terminated, and for Yolanda to be adopted.
Yolanda's counsel indicated that the TPR and adoption was in Yolanda's best interests.
Yolanda is young and is dependent upon a responsible, nurturing caregiver. She has behavioral issues for which she will need a patient yet stern caregiver. Unfortunately, she has a biological mother who has abjectly failed to assure her safety and well-being. Ivelisse has also failed to seek appropriate care for her daughter when necessary. Ivelisse failed to comply with the services necessary to help make her into an appropriate caretaker for Yolanda. Finally, Ivelisse failed to visit Yolanda while in DCF care and essentially, "washed her hands" of her daughter. CT Page 3593
Yolanda also has a biological father who cannot conform his conduct to the laws of the State of Connecticut and who has abjectly failed to perform his duties as a father for this child. The extent and nature of his criminal record and his lack of past parental involvement would fill any reasonable person viewing his parental prospects with foreboding.
It does not benefit Yolanda or the people of the State of Connecticut to place her into an environment where she obviously will not be provided with the structure and guidance that she so desperately needed in order to have any chance of growing up to be a successful adult and contributing member of society.
Our courts have recognized that "long-term stability is critical to a child's future health and development." In re Eden F., supra,250 Conn. 709. Furthermore, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." when resolving issues related to the permanent or temporary care of neglected children. In re Alexander V.,25 Conn. App. 741, 748, 596 A.2d 930 (1992); see also In re JuvenileAppeal (84-CD), 189 Conn. 276, 292, 455 A.2d 1313 (1983).
It is not in Yolanda's best interests to allow her to languish in foster care, awaiting Ivelisse's development of an adequate parenting capacity and a realization that she must actually safeguard her child from danger. Furthermore it is not in Yolanda's best interests to wait for the penitentiary door to open and readmit Juan Sr. into law abiding society. Yolanda should not be forced to wait to ascertain whether her biological father will break with his decade long pattern of recidivism and not be returned to the bosom of DOC with unfortunate regularity. She "should not be further burdened by having to wait for her parents to achieve the level of competency necessary" to serve as her parents. In reAmneris P., supra, 66 Conn. App. 385. The court therefore concludes that this child is entitled to the benefit of ending, without further delay, the long period of uncertainty as to the availability of her biological parents as her caretakers. Severance of her legal bonds to Ivelisse and Juan S., and freeing her for adoption will best eliminate the stressful limbo which persists while the TPR issues remain before this court.
The court has balanced the child's intrinsic need for stability and permanency against the benefits of maintaining a legal connection with Ivelisse or Juan Sr., and finds that the child's interests in sustained growth, development, well-being, and continuity and stability of their environment cannot be met by leaving her in foster care. In its totality, the evidence in this case clearly and convincingly militates in CT Page 3594 favor of termination of the respondents' parental rights. Pamela B. v.Ment, supra, 244 Conn. 313-14. Accordingly, with respect to the best interests of the child contemplated by § 17a-112 (j) (2), by clear and convincing evidence, and based upon all of the foregoing, including the testimony and evidence presented, the court finds that termination of the parental rights of Ivelisse is in the best interest of Yolanda; and further finds that termination of the parental rights of Juan Sr. is in the best interest of Yolanda.
 IV. ORDER OF TERMINATION
WHEREFORE, after due consideration of the child's sense of time, her need for a secure and permanent environment, the relationship she has developed with her foster parents and the totality of circumstances; and having considered all the statutory criteria and having found by clear and convincing evidence that grounds exist for termination of parental rights; and having concluded that the termination of the parental rights at issue will be in the child's best interests, the court issues the following ORDERS:
That the parental rights of Ivelisse M. and Juan Sr. are hereby terminated as to their daughter Yolanda.
That the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for Yolanda for the purpose of securing an adoptive family or other permanent placement for them.
That a permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court, as required by law. That primary consideration for adoption of Yolanda shall be offered to her current foster parents, if appropriate.
JUDGMENT MAY ENTER ACCORDINGLY.
Taylor, J.